ELECTRONIC CITATION:  2007 FED App. 0002P (6th Cir.)
File Name:  07b0002p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| In re:   THOMAS C. CONDON, | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| THOMAS C. CONDON, | ) | |
| | ) | |
| Appellant, | ) | No. 06-8021 |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN BRADY and MARY SMITH, | ) | |
| | ) | |
| Appellees. | ) | |
| _____ | ) | |

Appeal from the United States Bankruptcy Court
for the Southern District of Ohio, Western Division at Cincinnati.
No. 05-23836.

Argued:  November 8, 2006

Decided and Filed:  January 12, 2007

Before:  GREGG, PARSONS, and SCOTT, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ARGUED:** Harry B. Plotnick, Cincinnati, Ohio, for Appellant.  Eric W. Goering, Cincinnati, Ohio, for Appellees.  **ON BRIEF:**  Harry B. Plotnick, Cincinnati, Ohio, for Appellant.  Eric W. Goering, Cincinnati, Ohio, for Appellees.

―――――――――――

**OPINION**

―――――――――――

JAMES D. GREGG, Bankruptcy Appellate Panel Judge. Thomas C. Condon (the "Debtor") appeals the bankruptcy court's denial of his motion to convert his chapter 7 case to chapter 13. For the reasons that follow, the bankruptcy court's decision is VACATED and REMANDED.

## I. ISSUE ON APPEAL

What factors should a bankruptcy court examine to determine whether a debtor's motion to convert from chapter 7 to chapter 13 should be denied because of lack of good faith?

## II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Southern District of Ohio has authorized appeals to the Panel, and a final order of the bankruptcy court may be appealed by right under 28 U.S.C. § 158(a)(1). For purposes of appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted). An order denying a debtor's request to convert from chapter 7 to chapter 13 is a final order. *Copper v. Copper (In re Copper)*, 314 B.R. 628, 630 (B.A.P. 6th Cir. 2004), *aff'd*, 426 F.3d 810 (6th Cir. 2005) (citations omitted).

The bankruptcy court's determination of whether a debtor acted in good faith is a finding of fact, which is reviewed on appeal for clear error. *Id.* (citing *Alt v. United States (In re Alt)*, 305 F.3d 413, 419 (6th Cir. 2002); *Hardin v. Caldwell (In re Caldwell)*, 895 F.2d 1123, 1127 (6th Cir. 1990)); *see Adell v. John Richards Homes Bldg. Co. (In re John Richards Homes Bldg. Co.)*, 439 F.3d 248, 254 (6th Cir. 2006). Findings of fact "will only be clearly erroneous when, although there may be some evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Alt*, 305 F.3d at 422 (quoting *United States v. Latouf*, 132 F.3d 320, 331 (6th Cir. 1997)) (additional citation and internal quotation marks omitted).

The bankruptcy court's "conclusions with regard to the legal standard applicable to good faith determinations are questions of law reviewed under the *de novo* standard." *In re Love*, 957 F.2d 1350, 1354 (7th Cir. 1992) (citing *United States v. Singer Mfg. Co.*, 374 U.S. 174, 193, 83 S. Ct. 1773, 1783 (1963)); *see Sorah v. Sorah (In re Sorah)*, 163 F.3d 397, 400 (6th Cir. 1998) (citing *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103, 1111 (6th Cir. 1983) (application of legal standards and allocation of the burden of proof are conclusions of law)); *Luper v. Columbia Gas of Ohio, Inc. (In re Carled, Inc.)*, 91 F.3d 811, 813 (6th Cir. 1996) ("Although the factual underpinnings of the bankruptcy court's decision must be upheld unless clearly erroneous, the application of the legal standard to the facts is a question of law that we review de novo.") (citation omitted). De novo review requires the appellate court to interpret "'the law independently of the trial court's determination.'" *Thickstun Bros. Equip. Co. v. Encompass Servs. Corp. (In re Thickstun Bros. Equip. Co.)*, 344 B.R. 515, 517 (B.A.P. 6th Cir. 2006) (quoting *Treinish v. Norwest Bank Minn., N.A. (In re Periandri)*, 266 B.R. 651, 653 (B.A.P. 6th Cir. 2001)).

## III.   FACTS

The Debtor is a professional photographer who was convicted of multiple counts of abuse of a corpse in the Court of Common Pleas for Hamilton County, Ohio. The conviction resulted from photographs of dead bodies taken by the Debtor at the Hamilton County Coroner's Office. To date, the Debtor has served at least twelve months in prison for these offenses. In addition to the criminal charges, the Debtor also faces civil liability for his actions at the morgue. John Brady and Mary Smith (the "Appellees") represent a certified class of persons who sued the Debtor for tortious conduct relating to the photographs in the United States District Court for the Southern District of Ohio (the "class action lawsuit"). The certified class includes relatives of the deceased individuals whose remains were in the morgue when the Debtor's photographs were taken. The damages sought by the Appellees in the class action lawsuit are in the "multi-million dollar . . . range." (Tr. at 4.)

The Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on October 15, 2005. The Appellees were granted relief from stay to pursue the class action lawsuit by order entered October 27, 2005.

Shortly thereafter, on December 1, 2005, the Debtor filed a motion to convert his case to chapter 13. The Appellees filed an objection to the requested conversion, and the court held an

evidentiary hearing on January 24, 2006. The Debtor appeared at the hearing and gave extensive testimony regarding the circumstances that led to his bankruptcy filing, his current financial situation, and the reasons for his motion to convert to chapter 13. The Debtor explained that after his release from prison, he suffered from severe depression and had a difficult time obtaining employment. Due to the notoriety generated by the criminal case, the Debtor was unable to work in the commercial photography field. He accepted employment for significantly reduced wages in a metal fabrication shop. With the class action suit looming and little possibility of increasing his income in the future, the Debtor filed bankruptcy in a last ditch effort to move on with his financial life. The Debtor explained that he had relatively few creditors other than the class action tort claimants.[1] He also acknowledged that his primary reason for filing bankruptcy was to discharge the potential tort liability.

The Debtor stated that he filed his case under chapter 7 at the advice of his bankruptcy attorney. After the Debtor's initial meeting of creditors, the chapter 7 trustee allegedly asked the Debtor's attorney why he had advised the Debtor to file under chapter 7 when the potential class action debt was likely dischargeable in chapter 13. The Debtor's attorney apparently realized his error at that point,[2] and advised the Debtor to file a motion to convert. The motion was filed after the class action claimants obtained relief from the automatic stay.

Shortly before the hearing on the motion to convert, the Debtor filed amended schedules I and J. Amended schedule I disclosed the Debtor's monthly income as $2,166.66 but did not include any income from the Debtor's spouse. At the hearing, the Debtor testified that his wife has an income of approximately $1,000 per month. The Debtor's attorney claimed responsibility for this omission, representing to the court that the wife's income was properly excluded from the schedules filed with the original chapter 7 petition, and that her income was never added once conversion was sought.

---

[1] In actuality, the Debtor's schedules listed $107,639.34 in unsecured debt, not including the class action tort claim the amount of which was scheduled as "unknown."

[2] It is astounding that the Debtor's attorney, who has practiced bankruptcy law for twenty years, could have overlooked the potential applicability of 11 U.S.C. § 523(a)(6) when he advised the Debtor to file under chapter 7. Yet based upon the record, that is what occurred in this case.

Amended schedule J disclosed expenses totaling $2,065. The Debtor gave conflicting testimony about these expenses: at one point he stated that the scheduled amounts represented his total household expenses, but he later clarified that the figures reflected only his portion of the expenses. He also testified that the $200 monthly auto payment listed on schedule J went to his mother to repay her for expenses she incurred repairing a jointly owned vehicle. The Debtor further explained that the monthly $400 listed for "regular expenses from operation of business" related to his rental of art studio space. According to the Debtor, his sister leased the space and permitted him to use it to "put [his] artistic life back together." (J.A. at 76.) Although he was not a party to the lease, the Debtor reimbursed his sister for the rental costs. The Debtor also stated that the studio space contained approximately ten sculptures and six or seven paintings that had not been disclosed in his bankruptcy petition. He explained that he had done that work primarily for his emotional well-being, was "not actively engaged in trying to sell the work," and had not disclosed those items because he honestly did not believe they had any value. (J.A. at 76-77.) Alternatively, he stated that he had an "unspoken" agreement with his sister that the proceeds from any work done in that studio would belong to her.

The Debtor also filed a proposed chapter 13 plan just prior to the hearing on the motion to convert. The Debtor's proposed plan extended thirty-six months and provided a three percent distribution to unsecured creditors.

At the conclusion of the hearing, the bankruptcy court took the matter under advisement. On April 3, 2006, the court issued its memorandum opinion finding that the Debtor's motion to convert was filed in bad faith. The court's opinion focused on three main factors which suggested the Debtor lacked good faith in seeking chapter 13 relief. First, the court noted that the Debtor's motion to convert was motivated by his desire to "avail himself of the super-discharge under Chapter 13 to better discharge any potential judgment against him in the class action." (J.A. at 30.) While this alone did not establish bad faith, the court determined that it was a factor to be considered in assessing the Debtor's good faith under the totality of circumstances.

Next, the court noted that the Debtor's chapter 13 plan lasted the statutory minimum of three years and proposed to repay only three percent of his unsecured debt. Although the Bankruptcy

Code does not require the Debtor to do more than this, the court found that the percentage and length of repayment suggested a lack of good faith.

Finally, and most importantly, the court cited inaccuracies in the Debtor's schedules and conflicting testimony at the hearing on the motion to convert. The court noted that neither the Debtor's mother nor his sister were listed as creditors in the Debtor's schedules, despite the fact that he pays them $200 and $400 a month, respectively. The court also observed that the Debtor had failed to disclose the art work in his studio and his wife's income on his schedules. It found that the Debtor's explanations for these omissions were inconsistent and unpersuasive.

Based on these findings, the bankruptcy court entered an order on April 3, 2006, denying the Debtor's motion. This timely appeal followed.

## IV. DISCUSSION

Conversion from chapter 7 to chapter 13 is governed by § 706(a) of the Bankruptcy Code. Section 706(a) states:

> The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to covert a case under this subsection is unenforceable.

11 U.S.C. § 706(a). The circuit courts of appeals have disagreed whether a debtor has an absolute right to convert from chapter 7 to chapter 13.[3] The Court of Appeals for the Sixth Circuit has held that a debtor's right to convert under § 706(a) is not absolute and may be denied under certain circumstances, including a lack of good faith. *Copper v. Copper (In re Copper)*, 426 F.3d 810, 815 (6th Cir. 2005). In so holding, the court of appeals noted that it had previously determined that a chapter 13 petition could be dismissed if it was not filed in good faith, and therefore found it "logical to conclude that conversion from Chapter 7 to Chapter 13 may also be denied in the absence of good faith . . . ." *Id.* at 817 (citing *Alt v. United States (In re Alt)*, 305 F.3d 413, 418-19 (6th Cir. 2002)). The court observed that "[c]ommon sense dictates that the bankruptcy court should have authority to police the integrity of its proceedings." *Id*. Accordingly, the court of appeals affirmed and

---

[3] This split will likely soon be settled by the United States Supreme Court. *See Marrama v. Citizens Bank of Mass. (In re Marrama)*, 430 F.3d 474, 482 (1st Cir. 2005)*, cert. granted*, 126 S. Ct. 2859, 165 L. Ed.2d 894 (2006) (argued November 6, 2006).

adopted the bankruptcy appellate panel's conclusion that "if, upon its review of the facts, the bankruptcy court finds that the debtor's request for conversion was made in bad faith, or represents an attempt to abuse the bankruptcy process, the court may deny the requested conversion." *Id.* at 815 (quoting *Copper v. Copper (In re Copper)*, 314 B.R. 628, 636 (B.A.P. 6th Cir. 2004) (quoting *In re Brown*, 293 B.R. 865, 870 (Bankr. W.D. Mich. 2003)).

Like *Copper*, most reported decisions regarding a debtor's request for conversion to chapter 13 focus on the threshold question of whether a debtor's right to convert under § 706(a) is "absolute," and not on the factors to be examined to determine good faith or lack thereof. For those courts that interpret § 706(a) as providing a "one-time absolute right" to convert, evidence that a debtor lacks good faith or is seeking to abuse the bankruptcy process is irrelevant. *See, e.g., Miller v. United States Trustee (In re Miller)*, 303 B.R. 471, 475 (B.A.P. 10th Cir. 2003) (permitting conversion despite bankruptcy court's findings that debtor had engaged in egregious behavior and abuses of the bankruptcy court and Code to "avoid paying creditors"). In reported cases where the courts have concluded that a debtor's motion to convert may be denied for lack of good faith, the debtors' behavior is almost always shockingly egregious. *See, e.g.*, *Marrama v. Citizens Bank of Mass. (In re Marrama)*, 430 F.3d 474, 482 (1st Cir. 2005)*, cert. granted*, 126 S. Ct. 2859, 165 L. Ed.2d 894 (2006) (debtor's actions presented "classic profile of playing fast and loose with the bankruptcy process"); *In re Copper*, 426 F.3d at 815-16 (debtor "all but admitted a lack of good faith"). Due to the outrageous nature of the debtor's conduct in most of these cases, the courts, including the Sixth Circuit Court of Appeals, have not been called upon to closely examine the standard for determining whether a debtor's motion to convert was made in bad faith. This case, by contrast, requires a more detailed analysis of the factors to be considered.

In denying the Debtor's motion to convert, the bankruptcy court acknowledged that, under *Copper*, "[g]ood faith is determined by using the 'totality of the circumstances' analysis" that applies "when determining whether a debtor should be permitted to *commence* a chapter 13 case." (J.A. at 28; emphasis supplied.) However, the court actually applied the standard that is used to determine whether a debtor has proposed his chapter 13 plan in good faith for purposes of § 1325(a) of the Bankruptcy Code. The court stated that "[a] debtor must meet the criteria of 11 U.S.C. § 1325(a) before converting to Chapter 13" and "[u]nder 11 U.S.C. § 1325(a)(3), the debtor must have proposed his plan in good faith." (J.A. at 27.) The court further stated that "[t]he burden of proving

good faith is on the debtor." (J.A. at 28.) Accordingly, in reaching its conclusion that the conversion was in bad faith, the bankruptcy court focused on the percentage and length of repayment under the Debtor's proposed chapter 13 plan and the inaccuracies in the Debtor's schedules. The court also discussed the Debtor's motive in seeking conversion to chapter 13. Stating that the Debtor had "openly admitted that his Motion was based solely on a desire to avoid a determination that the potential judgment against him would not be dischargeable under Chapter 7, and not for the purposes of repaying his creditors," the court concluded that the Debtor's motion was not brought in good faith. (J.A. at 31.)

Given *Copper*'s relatively limited discussion of the circumstances that might lead to denial of motions to convert, it is understandable that a bankruptcy court might focus solely on the good faith standards that apply in the plan confirmation context. However, for the following reasons, the Panel concludes that the bankruptcy court erred as a matter of law when it relied exclusively on the plan confirmation standard of good faith and the corresponding burden of proof in its analysis of the Debtor's motion to convert.

The "totality of the circumstances" test referenced in *Copper* was discussed by the Sixth Circuit in *Alt*. The issue in *Alt* was whether a debtor's chapter 13 case could be dismissed for "cause" under § 1307(c) upon a finding that the case was not filed in good faith. To answer that question, the court first referred to the twelve factors it considers "in determining whether a [chapter 13] plan has been proposed in good faith under § 1325(a)." *In re Alt*, 305 F.3d at 419. Those factors include:

> (1) the debtor's income;
> (2) the debtor's living expenses;
> (3) the debtor's attorney's fees;
> (4) the expected duration of the Chapter 13 plan;
> (5) the sincerity with which the debtor has petitioned for relief under Chapter 13;
> (6) the debtor's potential for future earning;
> (7) any special circumstances, such as unusually high medical expenses;
> (8) the frequency with which the debtor has sought relief before in bankruptcy;
> (9) the circumstances under which the debt was incurred;
> (10) the amount of payment offered by [the] debtor as indicative of the debtor's sincerity to repay the debt;
> (11) the burden which administration would place on the trustee;
> (12) the statutorily mandated policy that bankruptcy provisions be construed liberally in favor of the debtor.

*Id.* (citing *Society Nat'l Bank v. Barrett (In re Barrett)*, 964 F.2d 588, 592 (6th Cir. 1992)). The court then noted that other circuits had recognized similar factors when determining whether a debtor's chapter 13 petition has been filed in good faith. *Id.* (citing *In re Love*, 957 F.2d 1350, 1357 (7th Cir. 1992)). Those factors are:

> the nature of the debt, including the question of whether the debt would be nondischargeable in a Chapter 7 proceeding; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors.

*Id.* (citing *In re Love*, 957 F.2d at 1357) (additional citations omitted). Because the above unenumerated factors relate to the broad question of whether the chapter 13 case was initiated in good faith, rather than the more narrow question of whether the plan itself was proposed in good faith, the *Love* and *Barrett* factors are not coterminous. *See In re Love*, 957 F.2d at 1360 (explaining that "while a lack of good faith in the structuring of a particular plan may block confirmation of that plan, the petition itself is still viable, absent a showing that the entire petition was filed in bad faith"). Still, the factors overlap to some extent and *both tests are designed to detect abuses of the provisions and spirit of chapter 13*. Therefore, *Alt* recognized that, when attempting to discern a debtor's motive in initiating chapter 13 proceedings under the totality of circumstances, a bankruptcy court may properly consider a debtor's good faith as reflected in a proposed chapter 13 plan. *Id.* The court of appeals cautioned, however, that "given the more severe consequences . . . 'the bankruptcy court should be more reluctant to dismiss a petition under Section 1307(c) for lack of good faith than to reject a plan for lack of good faith under Section 1325(a).'" *Id.* at 420 (quoting *In re Love*, 957 F.2d at 1356). The court also stated that the "burden of showing the debtor's lack of good faith" under § 1307(c) "is borne by the party seeking dismissal." *Id.* (citing *In re Love*, 957 F.2d at 1350); *compare Hardin v. Caldwell (In re Caldwell)*, 895 F.2d 1123, 1126 (6th Cir. 1990) ("The party who seeks a discharge under Chapter 13 bears the burden of proving good faith" under § 1325(a).).

In effect, denying a debtor's motion to convert from chapter 7 to chapter 13 has the same "harsh result" as dismissal of a chapter 13 case under § 1307(c): that is, the debtor is denied the opportunity to propose and perform a chapter 13 plan that would allow him to repay his prepetition debt over a specified period of time consistent with his available resources. *See generally Federal Land Bank of Louisville v. Glenn (In re Glenn)*, 760 F.2d 1428, 1433 (6th Cir. 1985) (discussing

overall purpose of Chapter 13). Accordingly, this Panel concludes that bankruptcy courts should apply the same good faith standard when evaluating a debtor's motion to convert to chapter 13 as is utilized when considering dismissal of a case under § 1307(c). *See In re Copper*, 426 F.3d at 814-15 (quoting *In re Copper*, 314 B.R. at 636) (stating that "the *same analysis* should apply in evaluating whether a debtor should be permitted to convert a case to chapter 13" as applies when "evaluating whether a debtor should be permitted to commence a chapter 13 case") (emphasis added). It also follows that the bankruptcy courts should exhibit the same "reluctance" to deny a motion to convert to chapter 13 that they employ when dismissing a petition for lack of good faith under § 1307(c). *See id.* at 814 (quoting *In re Copper*, 314 B.R. at 635) (noting that conversion may be denied in "*extreme circumstances*" suggesting bad faith or an abuse of the bankruptcy process) (emphasis added). Finally, the Panel concludes that the burden of proving a lack of good faith in the context of § 706(a) is on the party opposing the conversion.

This approach is consistent with the court of appeals' holding in *Copper* and with the general policy behind § 706(a), which suggests that conversion to chapter 13 should be freely granted because a "debtor should always be given the opportunity to repay his debts." *Id.* at 816-17 (quoting *In re Copper*, 314 B.R. at 637). By making denial of motions to convert the exception, but not the rule, bankruptcy courts ensure that conversion will be granted "readily – but not so readily as to allow and condone abuse." *In re Starkey*, 179 B.R. 687, 694 (Bankr. N.D. Okla. 1995); *see In re Copper*, 426 F.3d at 817 (quoting *In re Copper*, 314 B.R. at 637).

Under this standard, whether a debtor is filing under chapter 13 in the first instance or seeking chapter 13 relief via conversion from chapter 7, the "key inquiry" for courts attempting to ascertain a debtor's good faith "is whether the debtor is seeking to abuse the bankruptcy process." *In re Alt*, 305 F.3d at 419. To assist in this determination, bankruptcy courts weigh various factors which "may circumstantially reflect the debtor's motivation, and ultimately his 'good faith,'" in seeking relief under chapter 13. *In re McGovern*, 297 B.R. 650, 658 (S.D. Fla. 2003) (citing *Cabral v. Shamban (In re Cabral)*, 285 B.R. 563 (B.A.P. 1st Cir. 2002); *In re Fleury*, 294 B.R. 1 (Bankr. D. Mass. 2003)). If, on balance, the various factors suggest that the debtor's purpose in filing for chapter 13 relief is consistent with the underlying purpose and spirit of chapter 13 – i.e., financial "rehabilitation through repayment of debt" – the filing is likely in good faith. *Id.* at 658-60.

Because good faith is an "amorphous notion" it is impossible to identify the "infinite variety of factors" that might weigh in the "good faith equation." *Metro Employees Credit Union v. Okoreeh-Baah (In re Okoreeh-Baah)*, 836 F.2d 1030, 1033 (6th Cir. 1988). However, when determining whether a debtor's motion to convert has been brought in good faith, courts should apply the factors identified in *Alt* for determining whether a chapter 13 petition has been filed in good faith. The court might also consider factors that are typically used in the plan confirmation context.

Several reported decisions address various factors that commonly trigger denial of debtors' motions to convert to chapter 13. For example, the debtor in *Copper* had a nine-year history of "evasive and vexatious" actions "to avoid paying his ex-wife . . . amounts she was awarded under the parties' divorce decree." *In re Copper*, 426 F.3d at 811 (quoting *In re Copper*, 314 B.R. at 630). Despite the fact that the debtor was a college professor with an annual income of $89,000, these evasive actions included filing multiple bankruptcy petitions. *Id.* at 811; *In re Copper*, 314 B.R. at 632. In the debtor's sixth bankruptcy case, the debtor's ex-wife filed a complaint objecting to the debtor's discharge and asking that the debtor's obligations under the divorce decree be held nondischargeable. The debtor moved to convert his case to chapter 13 on the eve of trial of the dischargeability action, approximately seventeen months after the chapter 7 case was originally filed.

The Sixth Circuit Court of Appeals concluded that the debtor's motion to convert to chapter 13 was simply his latest attempt to manipulate the Bankruptcy Code in furtherance of his nine-year pattern of abuse. In light of this pattern, the court of appeals agreed with the bankruptcy court's assessment that the motion to convert was not motivated by a sudden, honest desire to repay his ex-wife. Rather, the motion was simply an ill-conceived ploy to evade the imminent trial, avoid the probable determination that he was not entitled to a discharge (or that the obligations to his ex-wife were nondischargeable), and further delay payment of a debt he never intended to pay. Coupled with the serious false statements in the debtor's schedules and statement of financial affairs and the debtor's "cavalier attitude and lack of candor" at trial, the facts did not suggest that the debtor sought conversion with the good faith intention of repaying his creditors. *Id.* at 811-12. The court of appeals, in agreement with this appellate panel, concluded that "the [d]ebtor's actions constitute[d] bad faith and abuse of process such as will justify the denial of a motion to convert under § 706(a)." *Id.* at 816.

The circumstances which led to denial of the debtor's motion to convert to chapter 13 in *Marrama* were equally egregious. *In re Marrama*, 430 F.3d at 482-83. In *Marrama*, the debtor transferred unencumbered property with a value of $85,000 to a revocable spendthrift trust, designating himself as the sole beneficiary and his girlfriend as the sole trustee. The debtor later admitted that his intent in making the transfer was to insulate the property from the claims of his creditors. Seven months later, the debtor filed a voluntary chapter 7 petition in which he disclosed that he was the beneficiary of the trust, but valued the trust res at zero and denied making any transfers of property within the previous year. The debtor also stated that he was owed no tax refunds, when in actuality, he was due a tax refund exceeding $11,000. After the chapter 7 trustee questioned the debtor about the property and the tax refund, the debtor responded by filing a motion to convert his case to chapter 13.

The Court of Appeals for the First Circuit affirmed the bankruptcy court's denial of the debtor's motion to convert due to the debtor's bad faith. The court of appeals noted that debtor's actions in the case "comport[ed] in all material respects with the classic profile of playing fast and loose with the bankruptcy process." *Id*. at 482. Prior to filing his bankruptcy petition, the debtor transferred a valuable asset with the intent of protecting it from creditors. When he filed his chapter 7 case, he failed to honestly disclose the transfer and other valuable assets. The debtor's alleged desire to repay his creditors in a chapter 13 arose only after these attempts and concealing assets failed. Further, permitting the debtor to convert to chapter 13 could have been highly prejudicial to creditors, in that conversion would have "divest[ed] the chapter 7 trustee of any authority to act in behalf of the estate to safeguard its assets" – the very assets the debtor had attempted to conceal. *Id*. These facts "amply" supported the bankruptcy court's conclusion that the motion to convert was not filed in good faith. *Id*.

The debtor in *Brown* filed a chapter 7 petition on his own behalf. *In re Brown*, 293 B.R. 865, 866 n.1 (Bankr. W.D. Mich. 2003). The debtor's primary asset was his residence. After the case was filed, the debtor constantly attempted to prevent the sale of this property. The debtor undervalued the property on his schedules, failed to attend and testify at § 341 meetings, failed to pay his filing fee, and "consistently refused to grant the Trustee, his realtor, and the prospective purchaser access to the . . . property." *Id*. at 871. Based on these actions, the bankruptcy court concluded that the debtor's motion to convert was merely another attempt to "manipulate the

bankruptcy process and prevent the sale" of the property. *Id*. As a result of the debtor's efforts to thwart the sale of the property, the sale price was reduced and the estate was harmed. Therefore, the court denied the motion based upon lack of good faith.

Although each of these debtors had their own individual types of outrageous bad faith, it is possible to discern common characteristics shared by all of the debtors. Each of them engaged in a pattern of egregious behavior, *both prior to filing and during the pendency* of their chapter 7 cases, which strongly suggested that they were manipulating and abusing the bankruptcy process in a continued effort to avoid repaying their debts. The debtor in *Copper* had a nine-year history of avoiding the debt to his ex-wife. The debtor in *Marrama* transferred and concealed valuable assets to keep them from the reach of creditors. In *Brown*, the debtor did everything in his power to prevent the trustee from selling his residence. Based on these patterns of abuse, the courts concluded that the conversion motions filed by these debtors were not motivated by an honest desire to repay their creditors. Without question, permitting debtors to convert under these circumstances would clash with the underlying purposes of chapter 13. Also, in each instance, another consequence exists: the general creditors and the bankruptcy estate are prejudiced by the debtor's postpetition actions or omissions.

When the appropriate legal standard is applied, the current findings of fact do not support the conclusion that the Debtor's motion to convert was filed in bad faith. There is no evidence that the Debtor engaged in a pattern of egregious behavior or displayed any of the hallmarks of bad faith illustrated in *Copper*, *Marrama*, or *Brown*. To the contrary, the evidence suggests that the Debtor waited several years after the incident that gave rise to his criminal and potential tort liability before filing for bankruptcy relief. It is unclear whether the bankruptcy court considered this, or other facts relating to the Debtor's prospects of repaying the debt that may result from the class action lawsuit, when it reached its bad faith conclusion.

Of the three factors the bankruptcy court discussed in its opinion, it placed particular emphasis on the inaccuracies and omissions in the Debtor's schedules and statement of financial affairs. This emphasis was not misplaced, since bankruptcy courts are "entitled to demand utmost good faith and honesty from debtors in the preparation of their schedules and statements of affairs." *In re Marrama*, 430 F.3d at 482. However, as troubling as these inaccuracies are, there is no

evidence that any of the misstatements or omissions in the Debtor's schedules were made in "an attempt to mislead the court." *In re Caldwell*, 895 F.2d at 1126. Also, there were no findings that the Debtor's postpetition acts or omissions prejudiced creditors or the bankruptcy estate. Based on statements and testimony at the hearing, it appears that much of the blame for the Debtor's sloppy and inaccurate schedules can be placed at the feet of his bankruptcy attorney. Of course, the Debtor is generally bound by the errors and omissions of his attorney. *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-34, 82 S. Ct. 1386 (1962). But the fact that the attorney caused the inaccuracies may suggest that the Debtor was not seeking to mislead the bankruptcy court or creditors of the estate.

The bankruptcy court also relied on the minimal length and amount of repayment of the Debtor's proposed chapter 13 plan in its bad faith analysis. Because this issue is typically considered in the plan confirmation process, it is not dispositive of a debtor's good faith, or lack thereof, in seeking chapter 13 relief.[4] However, to the extent the length of a debtor's proposed plan and the amount of payments thereunder may assist the bankruptcy court in distinguishing a debtor with a good faith intent to repay creditors from one who is abusing the provisions of chapter 13, this factor may be given some consideration under the "totality of circumstances" standard. Accordingly, while the bankruptcy court properly considered this factor in its analysis, this factor alone cannot support a finding of bad faith.

Finally, the bankruptcy court considered the Debtor's motive in seeking conversion to chapter 13. As noted above, this is not only an appropriate factor to consider when evaluating a debtor's good faith in seeking relief under chapter 13, it is essentially the heart of the good faith inquiry. We conclude, however, that the bankruptcy court's assessment of the Debtor's motive is not supported by the record. In its opinion, the bankruptcy court found that "the Debtor has openly admitted that his Motion was based solely on a desire to avoid a determination that the potential judgment against him would not be dischargeable under Chapter 7, and not for purposes of repaying his creditors." (J.A. at 31.) The court is correct that both the Debtor and his attorney admitted at the hearing that

---

[4] Indeed, the bankruptcy rules permit a debtor to file a chapter 13 plan after the filing of the case. *See* Fed. R. Bankr. P. 3015(b) ("The debtor may file a chapter 13 plan with the petition. If a plan is not filed with the petition, it shall be filed within 15 days thereafter, and such time may not be further extended except for cause shown and on notice as the court may direct. If a case is converted to chapter 13, a plan shall be filed within 15 days thereafter, and such time may not be further extended except for cause shown and on notice as the court may direct.").

the purpose of the requested conversion was to permit the Debtor to discharge the potential class action debt. However, the Debtor never stated that he sought conversion solely to avoid the debt and not for the purpose of repaying his creditors. "[A]n attempt to discharge a debt under Chapter 13 which is not dischargeable under Chapter 7 is not conclusive evidence" of bad faith, even if the debt was "incurred through [a debtor's] own criminal or tortious conduct." *In re Caldwell*, 895 F.2d at 1127. Although the bankruptcy court may consider how a debt arose, it is the debtor's actions to repay or avoid the debt *after incurring it* that are most relevant to the good faith analysis. *Id*. at 1127-28 (denying confirmation for lack of good faith in light of debtor's "unrelenting efforts to reduce the assets available to his creditors," court determined that debtor's proposed plan represented continuation of "unbroken pattern of deceit and delay" instead of "a good faith effort to repay" creditors) (emphasis added). Chapter 13 permits debtors to discharge debts that would not be dischargeable in chapter 7, provided the debtor devotes his disposable income to repayment of creditors over the statutorily-prescribed period.

Although we conclude that the bankruptcy court's findings are insufficient to support its bad faith conclusion in this case, this Panel believes that the bankruptcy court should be given an opportunity to re-evaluate the case based upon appropriate good faith factors. *In re Okoreeh-Baah*, 836 F.2d at 1033 (determinations of good faith "should be left simply to the bankruptcy court's common sense and judgment").

## V.   CONCLUSION

For the foregoing reasons, the bankruptcy court's decision is vacated and remanded for further consideration in accordance with this opinion.