ELECTRONIC CITATION:  2010 FED App. 0005P (6th Cir.)
File Name:  10b0005p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| In re: VINCENT JOHN CUSANO, | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| | ) | |
| VINCENT JOHN CUSANO, | ) | |
| | ) | |
| Appellant, | ) | No. 09-8055 |
| | ) | |
| v. | ) | |
| | ) | |
| GENE KLEIN, PAUL STANLEY, | ) | |
| GENE SIMMONS WORLDWIDE, INC., | ) | |
| KISSTORY, LTD., POLYGRAM RECORDS, | ) | |
| INC., SIMSTAN MUSIC, LTD., and | ) | |
| THE KISS COMPANY, | ) | |
| | ) | |
| Appellees. | ) | |
| _____ | ) | |

Appeal from the United States Bankruptcy Court
for the Middle District of Tennessee
Case No. 09-04143

Submitted:  May 3, 2010

Decided and Filed:  June 25, 2010

Before:  BOSWELL, HARRIS, and RHODES, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ON BRIEF:** Marc T. McNamee, Stephen M. Montgomery, NEAL & HARWELL, PLC, Nashville, Tennessee, for Appellees.  Vincent Cusano, Franklin, Tennessee, pro se.

---

**OPINION**

---

ARTHUR I. HARRIS, Bankruptcy Appellate Panel Judge. Vincent John Cusano ("Debtor"), *pro se,* appeals an order of the bankruptcy court conditioning the voluntary dismissal of his Chapter 13 case. The bankruptcy court barred the Debtor from refiling any voluntary petition under Chapter 13 for two years and limited the effect of the automatic stay should the Debtor file any voluntary petition for relief. For the reasons that follow, we AFFIRM the order of the bankruptcy court.

## I. ISSUES ON APPEAL

The issues on appeal are whether the bankruptcy court erred when it found that the Debtor filed his Chapter 13 case in bad faith and, having so found, whether it erred in conditioning the dismissal of his case.

## II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Middle District of Tennessee has authorized appeals to the Panel, and no party has timely elected to have this appeal heard by the district court. *See* 28 U.S.C. § 158(b)(6), (c)(1). A final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1). For purposes of appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States,* 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted). The bankruptcy court's order modifying and conditioning the Debtor's dismissal of his Chapter 13 case left the court with "nothing to do but execute the judgment" and is, therefore, final.

The court's findings of fact, including whether the Debtor acted in bad faith, are reviewed under the clearly erroneous standard. *See Alt v. United States (In re Alt)*, 305 F.3d 413, 420 (6th Cir. 2002). "A finding of fact is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Riverview Trenton R.R. Co. v. DSC, Ltd. (In re DSC, Ltd.)*, 486 F.3d 940, 944

(6th Cir. 2007) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S. Ct. 1504, 1511 (1985)).

The bankruptcy court's legal conclusions, including whether the bankruptcy court had authority to bar the Debtor from refiling under Chapter 13 for two years, are reviewed *de novo*. *See Marshall v. McCarty (In re Marshall)*, 407 B.R. 359, 362 (B.A.P. 8th Cir. 2009). "De novo means that the appellate court determines the law independently of the trial court's determination." *Treinish v. Norwest Bank Minn., N.A. (In re Periandri)*, 266 B.R. 651, 653 (B.A.P. 6th Cir. 2001) (citations omitted).

The grant or denial of a motion to amend a judgment is reviewed for an abuse of discretion. *See Hamerly v. Fifth Third Mortgage Co. (In re J&M Salupo Dev. Co.)*, 388 B.R. 795, 800 (B.A.P. 6th Cir. 2008). The bankruptcy court's decision to bar the Debtor from subsequent filings for two years and to provide prospective relief from the automatic stay is also reviewed under the abuse of discretion standard. *Marshall*, 407 B.R. at 362. "'Under this standard [of review], the district court's decision and decision-making process need only be reasonable.'" *In re J&M Salupo Dev. Co.*, 388 B.R. at 800 (quoting *Pequeno v. Schmidt (In re Pequeno)*, 240 F. App'x 634, 636 (5th Cir. 2007)). "An abuse of discretion occurs only when the [trial] court relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard." *Volvo Commercial Fin. LLC the Americas v. Gasel Transp. Lines, Inc. (In re Gasel Transp. Lines, Inc.)*, 326 B.R. 683, 685 (B.A.P. 6th Cir. 2005) (quoting *Schmidt v. Boggs (In re Boggs)*, 246 B.R. 265, 267 (B.A.P. 6th Cir. 2000)).

## III.   FACTS

Debtor Vincent Cusano, who is professionally known as Vinnie Vincent, ("Debtor") is a professional musician who was the lead guitarist for the band KISS from 1982 to 1984. During that time, and again in 1992, he co-wrote a number of songs for the band and entered into an agreement to share royalties evenly.

In 1989, the Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code. Listed on his schedules were rights in songs he had written for KISS, and listed as creditors were

band members Gene Klein (a/k/a Gene Simmons) and Paul Stanley. His proposed Chapter 11 plan was confirmed in 1990 and fully consummated in 1993, and the case was closed.

In 1997, the Debtor filed suit in the United States District Court for the Central District of California against KISS, individual band members Gene Klein and Paul Stanley, and others for, *inter alia*, unpaid royalties, defamation, and infringement on the right of publicity. The district court dismissed the Debtor's claims with prejudice and awarded attorney's fees and costs to the defendants. The Debtor then appealed to the Ninth Circuit Court of Appeals. Primarily at issue in that appeal were the effect of the Chapter 11 case upon postpetition unpaid royalties, the effect of statutes of limitations on the defamation and right of publicity claims, and the award of attorney's fees. In short, the Ninth Circuit concluded that the Debtor's postpetition song right royalties were the Debtor's property and reinstated certain claims based on that ruling. It further held that the Debtor's defamation and right of publicity claims were time barred. Because the award of attorney's fees was based on the defendants' status as "prevailing parties" on the right of publicity claim, the Ninth Circuit affirmed the award. On remand, the district court entered an order on September 5, 2003, dismissing the Debtor's claims in their entirety and awarding $66,457.47 in attorney's fees and $15,473.90 in costs to Gene Klein, Paul Stanley, The KISS Company, Gene Simmons Worldwide, Inc., SimStan Music, Ltd., KISStory, Ltd., and Polygram Records, Inc. ("Appellees"). As of January, 2010, this judgment was the subject of five pending appeals filed by the Debtor in the Ninth Circuit Court of Appeals.

Following entry of the judgment, the Appellees secured their judgment lien on copyrights owned by the Debtor and perfected their lien by recording their judgment in the United States Copyright Office on November 30, 2004. In 2004 and 2005, the Appellees served notices of garnishment on several companies that administer the Debtor's copyrights and disburse his royalties, including Broadcast Music, Inc. ("BMI").

In November, 2007, the Appellees obtained an order from the United States District Court for the Central District of California compelling the Debtor to appear for a judgment debtor examination on December 21, 2007. The Debtor moved to quash the order. His motion to quash was denied on December 12, 2007.

On December 14, 2007, the Debtor entered into a retainer agreement with attorney Dave Nave ("Nave") to file a petition for relief on his behalf under Chapter 13 of the Bankruptcy Code. On December 19, 2007, despite having retained Nave, the Debtor filed a petition for relief under Chapter 13 *pro se* resulting in the cancellation of the judgment debtor examination scheduled for December 21, 2007. He did not, however, complete the budget and credit counseling briefing required by 11 U.S.C. § 109(h). The petition was, therefore, dismissed on February 1, 2008.

The Appellees then moved to amend their judgment to incorporate $37,925.40 in monetary sanctions awarded by the Ninth Circuit Court of Appeals against the Debtor for filing a frivolous appeal. On February 15, 2008, after briefs regarding the motion to amend had been filed, the Debtor, represented by Nave, filed a second Chapter 13 petition. On February 22, 2008, the district court in California granted the motion to amend the Appellees' judgment. The Debtor appealed the February 22, 2008, order to the Ninth Circuit Court of Appeals. After the Appellees moved to convert the Debtor's case to one under Chapter 7, the Debtor instructed his attorney to dismiss his bankruptcy case. His Chapter 13 case was voluntarily dismissed on May 20, 2008, pursuant to 11 U.S.C. § 1307(b).

On March 27, 2009, the Appellees moved the United States District Court for the Central District of California for permission to sell the Debtor's copyrights to satisfy their judgment. A hearing was scheduled on their motion to sell for April 20, 2009. On April 13, 2009, the Debtor, *pro se*, filed his third petition for relief under Chapter 13. On April 30, 2009, the Debtor retained attorney Joe Weyant ("Weyant") to represent him in this Chapter 13 case.

Shortly after filing his third Chapter 13 case, the Debtor filed numerous motions and adversary complaints including a complaint against BMI in which he sought turnover of $20,998.53 in royalties which BMI was holding. On June 15, 2009, the bankruptcy court ordered that the Debtor was entitled to exempt and receive $2,300 of the funds subject to the turnover complaint. The court set a final hearing for July 27, 2009, to determine how the remaining funds held by BMI should be distributed.

On May 11, 2009, the Appellees filed their proof of claim in the Debtor's bankruptcy case. The amount of their claim as of the date the bankruptcy case was filed was $52,171.86. The proof of claim filed by the Appellees stated that it was based upon the California judgment, and provided

a detailed calculation of how the outstanding indebtedness had been reduced from the original principal balance of $81,931.37 to $52,171.86.

On May 15, 2009, the Debtor filed a legal malpractice claim against Nave in state court seeking $400,000 in compensatory damages and exemplary damages. The Debtor did not list this prepetition claim on his schedules.

On May 22, 2009, the Appellees requested a copy of the Debtor's Federal income tax return for the year 2008 pursuant to 11 U.S.C. § 521. The first meeting of creditors was scheduled for May 26, 2009. The Debtor failed to appear. On May 27, 2009, the Appellees filed a motion to convert the Debtor's case to Chapter 7. On May 28, 2009, they filed an Emergency Motion for a Rule 2004 Examination which was granted over the Debtor's objection. In the order granting the motion for the examination, the court also ordered the Debtor to produce to the Appellees his federal income tax returns for 2006 through 2008. The Debtor appeared for the Rule 2004 examination on June 3, 2009, but he did not produce the tax returns as ordered.

At the June 3, 2009, examination, the Debtor admitted that he moved to dismiss his 2008 Chapter 13 case because the Appellees had moved to convert his case to one under Chapter 7. It also came to light at the examination that during the pendency of the Debtor's 2007 and 2008 cases, he received copyright royalties from BMI which were subject to the Appellees' lien and outstanding garnishment. He did not disclose receipt of those funds to the Chapter 13 Trustee.

On June 18, 2009, the Debtor discharged his bankruptcy attorney - Weyant. On June 22, 2009, he filed, *pro se*, a Notice of Voluntary Dismissal, and the bankruptcy court entered an order of voluntary dismissal the same date. Also on that same date, the Appellees filed an objection to the Debtor's notice of voluntary dismissal of the case based upon alleged bad faith filings, and the Debtor's failure to disclose the malpractice suit against Nave and the receipt of royalties from BMI. On June 23, 2009, the Appellees filed an Expedited Motion to Alter or Amend the Notice of Dismissal asserting that the Debtor was not entitled to dismissal of his case because he had engaged in bad faith and abused the bankruptcy process. As an alternative to conversion of the Debtor's case to Chapter 7, the motion sought an order that the dismissal permanently bar the dischargeability of the Appellees' judgment and permanently bar the Debtor from filing another petition for relief under the Bankruptcy Code.

On July 27, 2009, the bankruptcy court held an evidentiary hearing on the motion to alter or amend the order of dismissal and the motion to convert the Debtor's case to Chapter 7. Both the Debtor and Nave testified at the hearing. On August 11, 2009, the bankruptcy court issued an order modifying the order and notice of voluntary dismissal and denying the motion to convert. The court concluded that, while the Debtor had a right to dismiss his petition pursuant to 11 U.S.C. § 1307(b), he had acted, and continued to act, in bad faith and that ample cause existed to impose conditions with the dismissal. The court barred the Debtor from refiling for Chapter 13 protection for two years, and ordered that any future filing have no impact or interference, through the automatic stay or otherwise, upon any matters arising from or relating to the litigation in the United States District Court for the Central District of California, or any appeal arising from that litigation.

The bankruptcy court simultaneously held a final hearing on the Debtor's Complaint for Turnover of Funds against BMI. The court ordered that, consistent with its prior order, BMI pay the Debtor, in full satisfaction of the Debtor's Tennessee exemptions, $2,300 to be deducted from prepetition royalties. The court further ordered that all other prepetition and postpetition royalties held by BMI be turned over to the Clerk of the United States District Court for the Central District of California to be held and administered in the litigation pending in that court, and that disposition of all royalties collected by BMI after entry of the bankruptcy court's order be subject to the Ninth Circuit litigation.

The Debtor's timely appeal of the bankruptcy court's August 11, 2009, orders followed.

## IV.    DISCUSSION

Before we address the issues at the heart of this appeal, we must briefly address two preliminary issues raised by the Debtor. The Debtor first asserts that the bankruptcy court lacked jurisdiction to hear the Appellees' motion to alter or amend the dismissal order. He argues that his notice of voluntary dismissal instantly terminated the case and the court's jurisdiction. Contrary to the Debtor's argument, however, the bankruptcy court retained jurisdiction to entertain the Appellees' timely-filed motion under Rule 59(e) of the Federal Rules of Civil Procedure, made applicable under Rule 9023 of the Federal Rules of Bankruptcy Procedure.

> Rule 59(e) was added to the Federal Rules of Civil Procedure in 1946. Its draftsmen had a clear and narrow aim. According to the accompanying

Advisory Committee Report, the Rule was adopted to "mak[e] clear that the district court possesses the power" to rectify its own mistakes in the period immediately following the entry of judgment.

*White v. New Hampshire Dept. of Employment Sec.*, 455 U.S. 445, 450, 102 S. Ct. 1162, 1165-66 (1982) (footnote omitted).  This includes orders of dismissal.  *See Boaz v. Mutual Life Ins. Co.*, 146 F.2d 321 (8th Cir. 1944).

*Boaz*, which was cited in the committee note accompanying the 1946 amendments that added subdivision (e) to Rule 59, is instructive.  In *Boaz*, the trial court granted the plaintiff's motion to dismiss her lawsuit without prejudice over the defendant's objection.  Two days later, the defendant filed a motion to set aside the dismissal without prejudice and enter an order of dismissal with prejudice.  The trial court granted the motion and dismissed the lawsuit with prejudice.  On appeal, the Eighth Circuit affirmed and held that the trial court had the power to amend an order of dismissal.  *Boaz,* 146 F.2d at 321-22.  In 1946, subdivision (e) of Rule 59 was added, effective March 19, 1948, to codify the power of a court to alter or amend an order, including an order of dismissal under Rule 41(a).  *See also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395, 110 S. Ct. 2447, 2455 (1990) (finding no federal statute or rule terminates district court's authority to impose sanctions after a notice of dismissal has been filed); *Dery v. Cumberland Cas. & Sur. Co. (In re 5900 Assocs., Inc.)*, 468 F.3d 326, 330-31 (6th Cir. 2006) (bankruptcy court retains jurisdiction to approve attorney's fees under 11 U.S.C. § 330 after underlying case is dismissed).  As the Supreme Court held in *Cooter & Gell,* "[i] is well established that a federal court may consider collateral issues after an action is no longer pending." 496 U.S. at 395, 110 S. Ct. at 2455.  Thus, an order of dismissal does not deprive the bankruptcy court of jurisdiction to entertain a timely filed motion to alter or amend an order of dismissal.

The Debtor next asserts that the bankruptcy court abused its discretion in granting the Appellees' motion to alter or amend the dismissal order because it did not meet the standard under Rule 59(e), but rather simply rehashed arguments previously made by the Appellees.  A court may reconsider a previous judgment under Rule 59(e) to accommodate an intervening change in controlling law, to account for newly discovered evidence, to correct a clear error of law, or to prevent manifest injustice.  *J&M Salupo Dev. Co.*, 388 B.R. at 805.  Contrary to the Debtor's assertion that the Appellees simply rehashed previously made arguments, the Appellees argued that

a conditional dismissal would prevent the manifest injustice of permitting a "serial and abusive filer who filed his petition in bad faith and has repeatedly abused the bankruptcy process, to voluntarily dismiss his Chapter 13 Petition for the third time in less than 18 months." (Appellant's App. 826.) Manifest injustice, as "contemplated by Rule 59(e), is an amorphous concept with no hard line definition." *In re Henning*, 420 B.R. 773, 785 (Bankr. W.D. Tenn. 2009). However, courts have established various guidelines to be used on a case-by-case basis to determine whether the necessary manifest injustice has been shown.

> A movant seeking Rule 59(e) relief must be able to show an error in the trial court that is direct, obvious, and observable. The movant must also be able to demonstrate that the underlying judgment caused them some type of serious injustice which could be avoided if the judgment were reconsidered. Essentially, the movant must be able to show that altering or amending the underlying judgment will result in a change in the outcome in their favor. A party may not seek Rule 59(e) relief on the premise of "manifest injustice" if the only error the movant seeks to correct is a poor strategic decision.

*Id.* (internal citations and quotations omitted).

In applying these guidelines to this case, we conclude that the bankruptcy court did not abuse its discretion in granting the Appellees' motion. The motion was not an attempt to correct a poor strategic decision. Rather, relief under Rule 59(e) in the form of a conditioned dismissal would allow the Appellees to potentially see the end of the California litigation and collect on their judgment lien - a change which is, without doubt, in the Appellees' favor. Moreover, conditioning this Debtor's dismissal is in line with the policy of protecting only honest, but unfortunate debtors, and not those simply manipulating and abusing the process to avoid the outcome of other litigation. Relief under Rule 59(e) was also appropriate given that motions to dismiss under 11 U.S.C. § 1307(b) are not automatically contested matters requiring notice and hearing. *See* Fed. R. Bankr. P. 1017(f)(2) and Advisory Committee Note to 1987 Amendment. For example, in the present case, the bankruptcy court granted the Debtor's motion to dismiss, improperly captioned as a notice of voluntary dismissal, on the same date it was filed, leaving the Appellees without an opportunity to respond before the motion to dismiss was granted.

Having dispensed with these preliminary issues, we now turn to the heart of this appeal - the bankruptcy court's finding of bad faith, and the resulting conditions placed on the Debtor's voluntary

dismissal of his case. We review the bankruptcy court's finding that the Debtor acted in bad faith for clear error. *See Condon v. Brady (In re Condon)*, 358 B.R. 317, 320 (B.A.P. 6th Cir. 2007). In reviewing that finding, we must give great deference to the trier of fact, the bankruptcy court, which was in the best position to assess the testimony and credibility of the Debtor. *See Alt*, 305 F.3d at 420; *Kaye v. Agripool, SRL (In re Murray, Inc.)*, 392 B.R. 288, 297 (B.A.P. 6th Cir. 2008).

A debtor's Chapter 13 case must be filed in good faith. *See Alt*, 305 F.3d at 418-20*; see also Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 375 n.11, 127 S. Ct. 1105, 1111-12 n.11 (2007) (declining "to articulate with precision what conduct qualifies as 'bad faith' sufficient to permit a bankruptcy judge to dismiss a Chapter 13 case or to deny conversion from Chapter 7" but noting that debtor's conduct must be "atypical"). Good faith is a fact-specific, flexible determination. *See Metro Employees Credit Union v. Okoreeh-Baah (In re Okoreeh-Baah)*, 836 F.2d 1030, 1032-33 (6th Cir. 1988). While the Sixth Circuit has not espoused exactly what constitutes bad faith, it has instructed that in determining a debtor's good faith, bankruptcy courts should consider the totality of the circumstances. *Alt*, 305 F.3d at 419. Some of the factors which may be considered in the context of dismissal of a Chapter 13 petition for lack of good faith are the timing of the petition, how the debt arose, the debtor's motive in filing the petition, how the debtor's actions affected creditors, and the debtor's treatment of creditors both before and after the petition was filed. *Id.* "Because good faith is an 'amorphous notion' it is impossible to identify the 'infinite variety of factors' that might weigh in the 'good faith equation.'" *Condon*, 358 B.R. at 326 (citing *In re Okoreeh-Baah*, 836 F.2d at 1033). A key inquiry, however, is whether the debtor is seeking to abuse the bankruptcy process. *Alt*, 305 F. 3d at 419.

While multiple filings are not, in and of themselves, improper or indicative of bad faith, a history of multiple filings and dismissals may be construed as bad faith. *In re Glenn*, 288 B.R. 516, 520 (Bankr. E.D. Tenn. 2002). Additionally, while filing on the eve of, for example, a foreclosure or, as in this case, a debtor's examination is not necessarily an indication of bad faith, it is probative of bad faith. *See Id*.

The bankruptcy court heard extensive testimony before determining that the Debtor had acted, and was continuing to act, in bad faith. The court based its finding upon many factors, including, but not limited to, the fact that the Debtor filed three petitions for relief in three years, the

timing of the filing of, and dismissal of, the petitions relative to the California litigation and the Appellees' motions to convert, the actions taken by the Debtor *pro se* despite his representation by counsel, his failure to follow advice of counsel, and his failure to disclose a significant claim for compensatory damages. Based upon the testimony of the Debtor and the record before it, the court then concluded:

> The Debtor has rushed litigation repeatedly in this Court when it suits his purpose to avoid resolution of the Ninth Circuit proceedings and delayed litigation when it does not suit his purpose to avoid resolution of the Ninth Circuit proceedings. The Debtor now again seeks voluntary dismissal of his Chapter 13 Petition without conditions. It is clear to this Court that a newly filed Chapter 13 case will end up in a procedural posture similar to this case if the Ninth Circuit litigation has not been concluded. The Debtor believes his Ninth Circuit litigation against [the Appellees] has merit. The Ninth Circuit Court of Appeals and the District Court for the Central District of California should have an opportunity to resolve completely the litigation between the Debtor and the [Appellees].

(Appellant's App. at 1342-43.)

The bankruptcy court's conclusion is more than adequately supported by the record. Considering the totality of the circumstances present in the record before us, we cannot conclude that the bankruptcy court was clearly erroneous in its finding of bad faith.

In arguing to this Panel that he acted in good faith, the Debtor asserts that any mistakes he made were inadvertent and that he did the best he could given his *pro se* status. While this Panel does, when appropriate, apply less stringent standards to filings by *pro se* litigants, such treatment has limits. *See, e.g., Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). We cannot excuse a lack of good faith based upon a debtor's *pro se* status, particularly when the debtor was in fact represented by counsel or had retained counsel during the vast majority of his time in the bankruptcy court, but failed to follow counsel's advice.

Having found that the Debtor had acted, and was continuing to act, in bad faith, the bankruptcy court placed two conditions upon the Debtor's dismissal - a two year bar against refiling under Chapter 13, and that any subsequent filing by the Debtor have no impact, through the automatic stay or otherwise, upon any matters relating to the California litigation. We review whether the bankruptcy court had the power to impose these sanctions *de novo*. *See Marshall*,

407 B.R. at 362. And, assuming that the court had the power to impose these sanctions, we review its decision to do so for an abuse of discretion. *Id.* In reviewing the bankruptcy court's decision, we are also mindful that sanctions "must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 111 S. Ct. 2123, 2132 (1991); *Mapother & Mapother, P.S.C. v. Cooper (In re Downs)*, 103 F.3d 472, 478 (6th Cir. 1996) ("The sanction levied must thus be commensurate with the egregiousness of the conduct."); *see also Marrama*, 549 U.S. at 375 n.11 (noting that debtor's conduct must be "atypical" to justify immediate denial of motion to convert under § 706).

While protesting the imposition of *any* bar upon refiling, the Debtor contends that if a bar was properly imposed upon his refiling, it should have been restricted to 180 days.

Section 349 provides in pertinent part:

> (a) Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.

Section 109(g) provides in pertinent part:

> Notwithstanding any other provision of this section, no individual . . . may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if -
>
> > (1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case[.]

Section 109(g) is not, however, a limitation on the bankruptcy court's authority to impose sanctions fashioned to prevent abuse of the bankruptcy system. Where there is sufficient cause, bankruptcy courts have the authority pursuant to 11 U.S.C. §§ 105(a) and 349(a) to prohibit bankruptcy filings in excess of 180 days. *See Dietrich v. Nob-Hill Stadium Props.*, No. 05-2255, 2007 WL 579547, at *5 (6th Cir. Feb. 15, 2007) (unpub.) ("We conclude that the plain language of section 349(a) appears to allow a bankruptcy court to dismiss a bankruptcy petition with prejudice, permanently, if there is sufficient cause."); *Casse v. Key Bank Nat'l Ass'n (In re Casse)*, 198 F.3d

327, 339-40 (2d Cir. 1999) (holding § 105(a) or § 349(a) give bankruptcy courts power to prohibit bankruptcy filings in excess of 180 days); *Colonial Auto Ctr. v. Tomlin (In re Tomlin)*, 105 F.3d 933 (4th Cir. 1997) (same); *Marshall*, 407 B.R. at 363 ("'Bankruptcy courts 'invariably derive from § 105(a) or § 349(a) of the Code . . . the power to sanction bad-faith serial filers . . . by prohibiting further bankruptcy filings for [over] 180 days.'"); *but see Frieouf v. United States (In re Frieouf)*, 938 F.2d 1099, 1104-05 (10th Cir. 1991) (holding that the 180 day bar in § 109(g) provides an absolute upward limit).

The record before us demonstrates sufficient cause to prohibit this Debtor from refiling for Chapter 13 protection for two years. The Debtor filed three Chapter 13 petitions in three years, all in response to actions taken by the Appellees in the California litigation in their efforts to collect on their judgment. As the bankruptcy court noted in its opinion, "The Debtor has rushed litigation repeatedly in this Court when it suits his purpose to avoid resolution of the Ninth Circuit proceedings and delayed litigation when it does not suit his purpose to avoid resolution of the Ninth Circuit proceedings." (Appellant's App. at 1342.) In light of these and other facts which led to the bankruptcy court's finding of bad faith, it is likely that the same cycle would have played out all over again had the Debtor been allowed to file another petition before the litigation in California was resolved. Therefore, the bankruptcy court did not abuse its discretion in barring the Debtor from filing for Chapter 13 protection for two years. *See In re Riccardo*, 248 B.R. 717, 724 (Bankr. S.D. N.Y. 2000) ("Such a remedy is most often invoked in the case of a serial refiler where the abuse of the bankruptcy process typically results in damage primarily to the interests of a single secured creditor.")

Sections 349(a) and 105(a) also give the bankruptcy court the authority to condition the dismissal of the Debtor's case upon certain prospective relief from the automatic stay. *See In re Feldman*, 309 B.R. 422, 426 (Bankr. E.D. N.Y. 2004) (finding authority to grant prospective relief from automatic stay pursuant to § 105(a) and appropriate to do so where "serial filers" abused bankruptcy process by using the stay to prevent foreclosure without intention or ability to complete bankruptcy process); *In re Hamer*, Nos. 00-1180 and 99-16601DAS, 2000 WL 1230496, at *7 (E.D. Pa. Aug. 18, 2000) (finding that §§ 105(a) and 349(a) provide authority to grant prospective relief from automatic stay); *In re Greenburg*, 200 B.R. 763, 769-70 (Bankr. S.D. N.Y. 1996) (finding authority in § 349(a)); *Abdul-Hasan v. Firemen's Fund Mortgage, Inc. (In re Abdul-Hasan)*, 104

B.R. 263, 266-67 (Bankr. C.D. Cal. 1989) (finding prospective relief from automatic stay permissible); *see also Marrama,* 549 U.S. at 375, 127 S. Ct. at 1112 (describing "the broad authority granted to bankruptcy judges to take any action that is necessary or appropriate 'to prevent an abuse of process' described in § 105(a) of the Code," as "surely adequate to authorize an immediate denial of a motion to convert filed under § 706"); *but see In re Norris*, 39 B.R. 85, 87 (E.D. Pa. 1984) ("In my view, a bankruptcy judge in a pending proceeding simply does not have the power to determine that the automatic stay shall not be available in subsequent bankruptcy proceedings.").

In *Greenburg*, for example, a Chapter 13 debtor was found to have filed two Chapter 13 petitions in an effort to frustrate a creditor's attempts in state court to collect upon the creditor's secured claim. In the face of the creditor's motion to convert her case to one under Chapter 7, the debtor filed a motion to dismiss under § 1307(b). After finding that cause existed under § 349(a) to impose conditions and sanctions on the debtor's dismissal, the court explained that "[t]hese should fit the situation, remedying the abuse and protecting the party most directly affected by the wrongful conduct. . . . [W]here a debtor abuses the bankruptcy process by filing a petition to obtain the benefit of the automatic stay, the court may dismiss the case and limit the effect of the automatic stay in any future case[.]" *In re Greenburg*, 200 B.R. at 769-70.

Considering the record before us, the bankruptcy court did not abuse its discretion by providing prospective relief from the automatic stay with respect to the litigation pending in California should the Debtor file any new voluntary petition for relief. The Debtor's conduct in prosecuting his bankruptcy cases only when it suits him is indicative of a bad faith attempt to frustrate the Appellees' efforts to collect on their judgment lien and constitutes an abuse of the bankruptcy process. Providing prospective relief from the automatic stay to allow the California litigation to come to a conclusion will protect the Appellees, the parties most directly affected by this Debtor's bad faith filings.[1]

One final issue raised by the Debtor which we must address is whether the bankruptcy court erred by ordering that the royalties held by BMI be turned over to the Clerk of the United States

---

[1] The Appellees have not appealed the decision of the bankruptcy court denying their motion to convert the Debtor's case to a proceeding under Chapter 7. Therefore, we have no occasion to address the issue of whether there is an absolute right to dismiss a Chapter 13 case under section 1307(b), even if a motion is pending to convert the case to a proceeding under Chapter 7.

District Court for the Central District of California to be held and administered in the litigation pending in that court. Simultaneously with the hearing on the Appellees' motion to alter or amend, the bankruptcy court held a final hearing on the Debtor's Complaint for Turnover of Funds against BMI. Having dismissed the Debtor's case with conditions, the bankruptcy court took no position on the disposition of the funds held by BMI except to order that: (1) consistent with its prior order, BMI pay the Debtor, in full satisfaction of Debtor's Tennessee exemptions, $2,300 to be deducted from prepetition royalties; (2) all other prepetition and postpetition royalties held by BMI be turned over to the Clerk of the United States District Court for the Central District of California to be held and administered in the litigation pending in that court; and (3) disposition of all royalties collected by BMI after entry of the bankruptcy court's order be subject to the Ninth Circuit litigation.

Except for again ordering that $2,300 be turned over to the Debtor, the bankruptcy court made no final disposition of the funds held by BMI. Instead, it ordered that those funds be turned over to the federal court in California with jurisdiction over the dispute. Such an order was well within the power of the bankruptcy court and not in error under 11 U.S.C. §§ 105 and 349(b)(3), the latter of which specifically permits a court "for cause" to order that a dismissal not "revest[] the property of the estate in the entity in which such property was vested immediately before the commencement of the case[.]"

## V.  CONCLUSION

For the foregoing reasons, the orders of the bankruptcy court are AFFIRMED.