*By order of the Bankruptcy Appellate Panel, the precedential effect of this decision is limited to the case and parties pursuant to 6th Cir. BAP LBR 8013-1(b). See also 6th Cir. BAP LBR 8010-1©.*

**File Name: 12b0009n.06**

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

In re:  CARL PERTUSET; VERA PERTUSET,  )
                                       )  No. 12-8014
       Debtors.  )
_____  )

Appeal from the United States Bankruptcy Court
for the Southern District of Ohio
No. 11-15607.

Submitted: November 13, 2012

Decided and Filed: December 18, 2012

Before: FULTON, HARRIS, and SHEA-STONUM, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

ON BRIEF:  William B. Logan, Jr., Kenneth M. Richards, Christian D. Donovan, FARM CREDIT SERVICES OF MID-AMERICA, Columbus, Ohio, Susan M. Argo, Cara R. Hurak, GRAYDON HEAD & RITCHEY LLP, Cincinnati, Ohio, Elizabeth Brown Alphin, MAPOTHER & MAPOTHER P.S.C., Louisville, Kentucky, for Appellees. Carl Pertuset, Vera Pertuset, McDermott, Ohio, pro se.

_____

**OPINION**

_____

**THOMAS H. FULTON**, Bankruptcy Appellate Panel Judge.  This appeal arises from two orders entered by the Bankruptcy Court for the Southern District of Ohio.  The first order dismissed Carl E. Pertuset and Vera Pertuset's ("the Debtors") Chapter 12 case with prejudice for a period of

two years and denied confirmation of their proposed Chapter 12 plan. This order also denied the Debtors' oral motion to continue the confirmation hearing and several of the Debtors' *pro se* evidentiary requests. The second order denied the Debtors' motion to reconsider pursuant to Federal Rules of Civil Procedure 59(e) and 60(b).

## I. ISSUES ON APPEAL

The issues in this appeal are (1) whether the Debtors' objection to proofs of claim stripped the claims of their presumptive validity pursuant to 11 U.S.C. § 502(a); (2) whether the creditors had standing to file claims or seek relief in the Debtors' Chapter 12 bankruptcy proceeding; (3) whether the bankruptcy court erred in denying several of the Debtors' *pro se* evidentiary requests; (4) whether the bankruptcy court erred in denying the Debtors' oral motion to continue the confirmation hearing; (5) whether the bankruptcy court erred in dismissing the Debtors' case with prejudice for a period of two years pursuant to 11 U.S.C. §§ 105(a), 349(a), and 1208©; (6) whether the bankruptcy court erred in denying confirmation of the Debtors' proposed Chapter 12 plan; and (7) whether the bankruptcy court erred in denying the Debtors' motion to reconsider.

For the following reasons, we affirm (1) the March 5, 2012 order dismissing the Debtors' case with prejudice for a period of two years, denying confirmation of the Debtors' proposed Chapter 12 plan, denying the Debtors' *pro se* evidentiary requests, and denying the Debtors' oral motion to continue the confirmation hearing, and (2) the March 30, 2012 order denying the Debtors' motion to reconsider.

## II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Southern District of Ohio has authorized appeals to the Panel, and neither party has timely elected to have this appeal heard by the district court. 28 U.S.C. §§ 158(b)(6), (c)(1). A final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1). For purposes of appeal, an order is final if it "ends the litigation on the merits

and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted).

The bankruptcy court's order denying confirmation of the Debtors' plan and dismissing the case with prejudice is a final, appealable order. *Raynard v. Rogers* (*In re Raynard*), 354 B.R. 834, 836 (B.A.P. 6th Cir. 2006). An order denying a motion for reconsideration under Federal Rule of Civil Procedure 59(e) or 60(b) is also a final order for purposes of appeal. *Hamerly v. Fifth Third Mortg. Co.* (*In re J & M Salupo Dev. Co.*), 388 B.R. 795, 800 (B.A.P. 6th Cir. 2008). Once final judgment is entered on all claims, pre-trial orders relating to discovery are final orders. *In re Gray*, 447 B.R. 524, 531 (E.D. Mich. 2011).

The bankruptcy court's denial of the Debtors' motion to reconsider is reviewed for an abuse of discretion. *In re J & M Salupo Dev. Co.*, 388 B.R. at 805. An abuse of discretion is established when the reviewing court is left with a "definite and firm conviction that the trial court committed a clear error of judgment." *Mich. Div.-Monument Builders of N. Am. v. Mich. Cemetery Ass'n,* 524 F.3d 726, 739 (6th Cir. 2008). "An abuse of discretion occurs only when the [trial] court relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard." *Kaye v. Agripool, SRL* (*In re Murray, Inc.*), 392 B.R. 288, 296 (B.A.P. 6th Cir. 2008) (citation omitted) (internal quotation marks omitted).

The bankruptcy court's dismissal of the Debtors' case with prejudice presents a mixed question of law and fact. *Cusano v. Klein* (*In re Cusano*), 431 B.R. 726, 730 (B.A.P. 6th Cir. 2010). When a mixed question of law and fact arises in the bankruptcy context, the reviewing court "must break it down into its constituent parts and apply the appropriate standard of review for each part." *Bank of Montreal v. Official Comm. of Unsecured Creditors* (*In re Am. HomePatient, Inc.*), 420 F.3d 559, 563 (6th Cir. 2005) (citation omitted).

The factual findings which support dismissal of the bankruptcy case, including determinations as to whether the Debtors acted in bad faith, are reviewed under the clearly erroneous standard. *Riverview Trenton R.R. Co. v. DSC, Ltd.* (*In re DSC, Ltd.*), 486 F.3d 940, 944 (6th Cir. 2007); *Cusano*, 431 B.R. at 730. "[A] finding [of fact] is clearly erroneous when although there is

evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 573, 105 S. Ct. 1504, 1511 (1985) (citation omitted) (internal quotation marks omitted).

"The bankruptcy court's legal conclusions, including whether the bankruptcy court had authority to bar the Debtor from refiling . . . for two years, are reviewed *de novo*." *Cusano*, 431 B.R. at 730 (citation omitted). "Under a *de novo* standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination." *Menninger v. Accredited Home Lenders* (*In re Morgeson*), 371 B.R. 798, 800 (B.A.P. 6th Cir. 2007) (citation omitted).

The bankruptcy court's decision to deny confirmation of the Debtors' plan also presents a mixed question of law and fact. *Raynard*, 354 B.R. at 836. The legal conclusions underlying the bankruptcy court's decision are reviewed *de novo*. *Id.* A court's determination that a plan does not meet the "best interests of the creditors test" is a conclusion of law. *Id.* The factual findings underlying the bankruptcy court's decision are reviewed for an abuse of discretion. *Id.* The bankruptcy court's determinations that the plan was not proposed in good faith and that the plan is not feasible are factual findings reviewed under the clearly erroneous standard. *Gen. Elec. Credit Equities, Inc. v. Brice Rd. Devs., L.L.C.* (*In re Brice Rd. Devs., L.L.C.*), 392 B.R. 274, 282 (B.A.P. 6th Cir. 2008); *In re Dow Corning Corp.*, 255 B.R. 445, 498 (E.D. Mich. 2000) .

A court's evidentiary decisions are reviewed for an abuse of discretion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141, 118 S. Ct. 512, 517 (1997). This standard of review applies to decisions denying requests for a continuance and requests for an extension of the discovery deadlines. *Woods v. McGuire*, 954 F.2d 388, 391 (6th Cir. 1992); *Bennett v. Scroggy*, 793 F.2d 772, 774-75 (6th Cir. 1986). A court's determination on evidentiary matters "will be reversed only if the abuse of discretion caused more than harmless error." *Tompkin v. Philip Morris USA, Inc.*, 362 F.3d 882, 897 (6th Cir. 2004) (citations omitted).

## III. FACTS

The Debtors filed their voluntary Chapter 12 petition on September 14, 2011. The Debtors are family farmers who operate a timber business. At all times during the proceedings before the bankruptcy court, the Debtors were represented by counsel.

This is the Debtors' second Chapter 12 filing. They filed their first Chapter 12 petition on November 16, 2009. The bankruptcy court dismissed that case on April 9, 2010, pursuant to 11 U.S.C. § 1208(c)(3) for failure to file a plan timely and 11 U.S.C. § 1208(c)(9) for continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation. The bankruptcy court's decision to dismiss the first case under § 1208(c)(9) was based on the Debtors' inability to demonstrate they had sufficient income with which to fund a Chapter 12 repayment plan. On appeal, the BAP affirmed on both grounds. *Pertuset v. Am. Sav. Bank, FSB* (*In re Pertuset*), 438 B.R. 354 (B.A.P. 6th Cir. 2010) (table). Throughout the pendency of that case, the Debtors were also engaged in the timber business.

According to Schedule I, Carl Pertuset's sole source of income is $989.00 per month from Social Security disability payments. Vera Pertuset's sole source of income is $2,000.00 per month from operation of the Debtors' timber business. The Debtors listed total monthly expenses of $2,985.00 on Schedule J. These expenses included a $1,000.00 monthly Chapter 12 plan payment but did not include any expenses associated with the timber farming business.

On their most recent bankruptcy petition, the Debtors listed a number of creditors on Schedule D, including Quality Car and Truck Leasing ("Quality Leasing"), Farm Credit Services of Mid-America ("FCS"), and American Savings Bank, FSB ("ASB") (collectively "Appellees"). The Debtors did not formally indicate on Schedule D that any of the claims were contingent, unliquidated, or disputed.

Quality Leasing filed seven claims on September 21, 2011. All seven claims were secured by various pieces of equipment. Quality Leasing attached copies of the relevant security documents to each claim. These documents demonstrate that Quality Leasing was the secured creditor/lender

for all of the claims. The security interests were perfected by either filing the U.C.C. financing statement with the Ohio Secretary of State or by notation on the certificates of title.

FCS filed two claims on October 24, 2011, which were amended January 10, 2012. One was for the Debtors' personal guaranties on a lease. This claim was filed as unsecured. The other claim was for three notes which were cross collateralized by real estate and equipment. FCS attached copies of the relevant security documents to the claims. All of these documents reflect FCS as the secured creditor/lender for all the claims. The security interests were perfected by filing the mortgage with the Scioto County Recorder's office, filing the U.C.C. financing statements with the Ohio Secretary of State, or notation on the certificates of title.

ASB filed one claim on November 4, 2011, which included the total due under five separate notes. All five notes were secured by real property. ASB attached copies of their security documents to the proof of claim. These documents show ASB as the secured creditor/lender for all the claims. The security interests were perfected by filing the mortgages with the Scioto County Recorder's office.

On September 21, 2011, Quality Leasing filed a motion for relief from the automatic stay and a motion for adequate protection. Quality Leasing and the Debtors resolved the motion for relief from stay by consent order. The motion for adequate protection was continued.

On October 31, 2011, ASB filed a motion for relief from stay ("Motion for Relief"). ASB sought authority to enforce their rights in their collateral in state court. The collateral consisted of three parcels of real property in McDermott, Ohio. According to ASB's motion, the Debtors had not made a payment on any of the properties since September 2009.

On November 4, 2011, ASB filed a motion to dismiss ("Motion to Dismiss") the Debtors' case pursuant to 11 U.S.C. § 1208(c)(1) and (c)(9). ASB alleged that the Debtors' failure to maintain insurance on ASB's collateral and their failure to demonstrate that they had the ability to generate sufficient income amounted to gross mismanagement that was prejudicial to ASB within the meaning of § 1208(c)(1). ASB also alleged cause for dismissal was warranted under § 1208(c)(9)

due to continuing loss to or diminution of the Debtors' estate and the absence of a reasonable likelihood of rehabilitation. According to ASB's motion, Carl Pertuset testified at his § 341 meeting of creditors that the Debtors currently only had two contracts for the harvesting and sale of timber and that both contracts were oral agreements with family members. The Debtors refused to disclose the identities of these family members or any details about these contracts. Consequently, ASB argued it was impossible to ascertain any details about the contracts, including how much income they will generate and whether the contracts are valid and enforceable. ASB also argued that there was no proof that the Debtors could fund expenses associated with the timber business or that the Debtors could afford to pay for all of the property they were proposing to retain in their Chapter 12 plan.

On November 28, 2011, Quality Leasing joined in ASB's Motion to Dismiss. Quality Leasing argued that because the Debtors were in default on all of the accounts with Quality Leasing, the Debtors could not propose a feasible plan.

At the hearing on ASB's Motion for Relief and Motion to Dismiss, the bankruptcy court took the motions under advisement pending submission of supplemental documentation by the Debtors. The bankruptcy court directed the Debtors to file proof of insurance on ASB's collateral. Based on concerns raised by several parties that the Debtors did not meet the income requirements for Chapter 12, the bankruptcy court also ordered the Debtors to provide historical financial information.

The Debtors failed to file the necessary documents. Although they filed a "Notice of Filing of Insurance," that notice was insufficient. The Debtors did not present proof of insurance policies which reflected ASB as the loss payee for any of the three parcels of real property. ASB subsequently filed an objection to the Debtors' notice.

As for the historical income information, the Debtors filed an untimely response which indicated that their farm revenue was $196,021.00 in 2009 and $82,599.00 in 2010. This information contradicted the figures the Debtors provided on their Statement of Financial Affairs. Those figures indicated that the Debtors' farm income was "(business loss)" for 2009 and $9,238.00 for 2010.

One day before the § 1221 deadline expired, the Debtors filed a proposed Chapter 12 plan. The Debtors stated therein that they believed there were numerous issues with many of their creditors' claims. Under various theories including securitization, the Debtors alleged that ASB, FCS, and Quality Leasing did not have valid security interests in the Debtors' property and, as such, did not have valid claims against the estate.

The Debtors proposed to pay $52,000.00 to their secured creditors with valid proofs of claim. The Debtors further proposed to pay their unsecured creditors 1% of their claims for a period of 5 years. Any amounts not paid were to be discharged upon successful completion of the plan. The plan, however, was unclear about which claims the Debtors believed were valid and which were contested. The plan was also unclear about which creditors were to be paid and in what amounts. The Debtors did not attach a liquidation analysis as an exhibit to their plan, nor did they provide any present or projected income expense figures in the plan.

The bankruptcy court set a confirmation hearing for January 13, 2012, and directed any parties wishing to object to the plan to file such objections by January 9, 2012. The court further directed any party intending to present evidence or testimony at the confirmation hearing to file the necessary documents with the court by January 9, 2012.

On December 15, 2011, the bankruptcy court issued a second supplemental order extending the deadlines for the Debtor to file copies of the relevant insurance policies and evidence of their income. The bankruptcy court ordered the Debtors to submit proof of both issues by December 30, 2011.

On December 30, 2011, the Debtors' attorney, Robert Hoskins ("Hoskins"), filed a second notice of filing of insurance and proof of farm income. The information with regard to the insurance remained unchanged from the earlier filing. With respect to the proof of income, Hoskins filed a list of income for 2008 through 2010 which consisted of copies of portions of the Debtors' federal income tax returns. According to this document, the Debtors' net income was $908.00 in 2008, $4,505.00 in 2009, and negative $21,008.00 in 2010.

Despite the fact that they were represented by counsel, the Debtors submitted three *pro se* filings on December 30, 2011. The first filing was styled as a request to take judicial notice of the fact that the court did not have jurisdiction over the matters and that the court was not the proper venue for the proceedings. The second *pro se* filing was styled "Affidavit of Facts" in which the Debtors stated they were unable to obtain insurance on one parcel of ASB's collateral. Lastly, the Debtors filed a letter which indicated that they wanted summonses issued to W. Nawaz Raja ("Raja"), "a mortgage forensic auditor," and Rodney Dale Class ("Class") as "P.A.G." [private attorney general].

The bankruptcy court conducted a telephonic status conference on January 5, 2012. Counsel for ASB and FCS, the Chapter 12 Trustee, and Hoskins all appeared telephonically for the hearing. At the hearing, the bankruptcy court granted the Debtors' motion to continue the confirmation hearing to January 25, 2012. The bankruptcy court also extended the deadline for filing an objection to the plan, exhibits, or other evidence through January 23, 2012. Hoskins represented that he had the authority to, and would in fact, withdraw the Debtors' *pro se* filings by January 6, 2012. Hoskins also stated that he did not believe the Debtors would make any further *pro se* filings. The order memorializing the court's ruling indicated that if the Debtors filed an amended proposed Chapter 12 plan prior to the January 25, 2012 hearing, the confirmation hearing would still be conducted on that date.

Despite his assurances to the contrary, Hoskins never withdrew the Debtors' December 30, 2011 *pro se* filings. On January 6, 2012, the Debtors submitted a number of additional *pro se* filings. The first filing was an objection to the January 5, 2012 telephonic status conference. The Debtors alleged that by being excluded from the hearing, their right to due process was being violated under the "Taft Hartley Act," also known as the National Labor Relations Act, 29 U.S.C. §§ 151 - 169.

The Debtors also submitted a filing which asked the bankruptcy court yet again to take judicial notice of the venue issues in the case and a "Motion of Entry Appearance" for Class as a "Private Attorney General." As authority for this employment, the Debtors cited to various provisions of the Civil Rights Act, 42 U.S.C. § 1983, and the Rules of Procedure for the Occupational Safety and Health Administration, 29 C.F.R. § 2200.23.

The last *pro se* filing the Debtors submitted was a document docketed as, and drafted in the style of, a proposed order ("Proposed Order"). Within the body of this order, the Debtors set forth objections to 17 of the 21 claims filed in their case. These objections included all of the claims filed by the Appellees. As grounds for each objection, the Debtors state, "deny for lack of want of knowledge." The Debtors did not sign the filing. Instead, they inserted a signature line for the bankruptcy court and included the phrase, "it is so ordered."

On January 9, 2012, the Chapter 12 Trustee filed an objection to confirmation in which he asserted the Debtors had not submitted a feasible plan and that the plan that was submitted lacked specificity.

On January 10, 2012, Hoskins filed a motion to withdraw from his representation of the Debtors. The bankruptcy court set the motion for a hearing contemporaneous with the confirmation hearing on January 25, 2012. Within the scheduling order, the bankruptcy stated it would not allow Hoskins to withdraw prior to the hearing unless the Debtors were able to obtain substitute counsel prior to January 25, 2012.

On January 20, 2012, the Debtors submitted five more *pro se* filings. The first filing purported to direct the court to summon various parties including ASB and Quality Leasing to appear at the January 25, 2012 hearing. The Debtors also submitted a filing which asked the court to take judicial notice of the fact that there were jurisdictional, securitization, and standing issues with respect to the claims of ASB, FCS, and Quality Leasing. Within this filing, the Debtors stated that they would not release Hoskins from his representation of them.

The Debtors also filed another "Evidence of Facts" on January 20, 2012, which stated the Debtors would present four exhibits at the January 25, 2012 hearing. Three of the exhibits were "Mortgage Forensic Securitization Analysis Reports" prepared by Raja purporting to detail the securitization of the Debtors' loans by ABS, FCS, and Quality Leasing. The fourth exhibit was a listing of federal and state court decisions which discuss "Finance and Credit" issues within the realm of agricultural law.

The bankruptcy court conducted a hearing on January 25, 2012, on the following matters:

1. Confirmation of the Debtors' Chapter 12 plan and objections thereto by the Chapter 12 Trustee, FCS, ASB, Quality Leasing, and the Ohio Valley Resource Conservation and Development;

2. Quality Leasing's motion for adequate protection and the Debtors' response thereto;

3. ASB's motion for relief from the automatic stay;

4. ASB's motion to dismiss, which Quality Leasing had joined, and the Debtors' response thereto;

5. Hoskins's motion to withdraw;

6. FCS's oral motion to dismiss the Debtors' case with a two-year bar to refiling; and

7. The Debtors' oral motion to continue the confirmation hearing for the purpose of filing a revised plan.

On March 5, 2012, the bankruptcy court entered an order:

1. denying the Debtors' oral motion to continue the confirmation hearing;

2. denying confirmation of the Debtors' proposed Chapter 12 plan for failure to comply with 11 U.S.C. § 1225(a)(3), (a)(5), and (a)(6);

3. dismissing the Debtors' case pursuant to 11 U.S.C. § 1208(c);

4. dismissing the Debtors' case with prejudice for a period of two years pursuant to 11 U.S.C. §§ 109(g) and 349(a);

5. denying ASB's motion for relief from the automatic stay as moot;

6. denying Quality Car's motion for adequate protection as moot;

7. granting Hoskins's motion to withdraw as the Debtors' attorney; and

8. denying the Debtors' *pro se* filings and their requests regarding certain evidentiary matters.

On March 14, 2012, the Debtors filed a *pro se* motion to reconsider the bankruptcy court's March 5, 2012 order pursuant to Federal Rules of Civil Procedure 59(e) and 60(b). As one of the grounds for this motion, the Debtors alleged that the bankruptcy judge was biased in favor of the creditors. The Debtors alleged that the bankruptcy judge previously represented "the secured lenders and unsecured creditors in bankruptcy proceedings" and that the bankruptcy judge had worked in the banking industry prior to obtaining her law degree. (Mot. to Reconsider at 3, Bankr. Case No. 11-

15607, ECF No. 119.) The Debtors also stated that the bankruptcy judge "repeatedly threatened" Hoskins with sanctions and contempt proceedings. (*Id.* at 4.)

As the other grounds for their motion, the Debtors repeated their securitization and standing arguments from earlier filings. They also alleged that the bankruptcy court erred in denying the Debtors' request to introduce the mortgage securitization reports and to present the testimony of Raja and Class as witnesses at the confirmation hearing. Lastly, the Debtors argued that the Appellees had engaged in "Servicing Misconduct," "Unfair, Deceptive and Unlawful Loan Loss Mitigation Processes," "Wrongful Conduct Related to Foreclosure," "Bankruptcy-Related Misconduct," and "Violations of the False Claims Act" and that the bankruptcy court had erred in not addressing these claims.

On March 30, 2012, the bankruptcy court issued an order denying the Debtors' motion to reconsider. On April 2, 2012, the Debtors filed their timely notice of appeal.

## IV. DISCUSSION

A. *Claims Allowance and Standing Issues*

As framed by the Debtors, the issues in this appeal are: (1) whether the Debtors' objection to the Appellees' proofs of claim stripped the claims of their presumptive validity pursuant to 11 U.S.C. § 502(a); and (2) whether the Appellees had standing to file claims or seek relief in the Debtors' Chapter 12 bankruptcy proceeding. While it is true that the Debtors repeatedly argued that the Appellees did not have standing in their case, it does not appear that they ever specifically argued that their objection to the proofs of claim stripped the claims of their presumptive validity prior to filing their briefs in this appeal. Nor does it appear that the bankruptcy court ever considered such an argument. Ordinarily, issues raised for the first time on appeal are considered waived. *R.D.F. Devs., Inc. v. Sysco Corp.* (*In re R.D.F. Devs., Inc.*), 239 B.R. 336, 340 (B.A.P. 6th Cir. 1999). If, however, parties are proceeding with an appeal *pro se*, the Panel may hold the appellants to a less stringent standard and consider the novel arguments. *See Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004).

In determining whether the Debtors' objection to the Appellees' proofs of claim stripped the claims of their presumed validity, we must first consider whether the Debtors validly objected to the Appellees' claims. In their brief on appeal, the Debtors argue that they filed a valid objection to the claims when they presented their Proposed Order to the bankruptcy court on January 6, 2012. They also argue that the bankruptcy court erred in not conducting a hearing on their objection and in not considering the evidence in support of their objection.

Although the Proposed Order filed on January 6, 2012, stated that the Debtors objected to all of the Appellees' claims, the Debtors were represented by counsel at the time they filed the Proposed Order. Pursuant to 28 U.S.C. § 1654, parties have the right to "plead and conduct their own cases personally *or* by counsel" in all federal courts. 28 U.S.C. § 1654 (emphasis added). The statute is written in the disjunctive. As a result, courts have consistently held that there is no statutory right to hybrid representation. *MOVE, Org. v. City of Phila.*, 89 F.R.D. 521, 523 n.1 (E.D. Pa. 1981). A party may elect to either represent himself or be represented by an attorney. He cannot choose to do both. *United States v. Cromer*, 389 F.3d 662, 680 (6th Cir. 2004); *O'Reilly v. New York Times Co.*, 692 F.2d 863, 868 (2d Cir. 1982) ("[T]he rights of self-representation and representation by counsel cannot both be exercised at the same time" under 28 U.S.C. § 1654.) (citation omitted). In order to "assert his statutory right of self-representation," an individual must "unequivocally discharge any lawyer previously retained." *Id.* The decision to allow a party to switch from being represented by counsel to self representation is within the court's sound discretion. *United States v. Mosely*, 810 F.2d 93, 98 (6th Cir. 1987); *United States v. Halbert*, 640 F.2d 1000, 1009 (9th Cir. 1981).

A court has no obligation to recognize any *pro se* filings or arguments made by a party if the party was represented by counsel at the time the filings or arguments were made. *United States v. Martinez*, 588 F.3d 301, 328 (6th Cir. 2009); *United States v. Williams*, 495 F.3d 810, 813 (7th Cir. 2007). When a party is represented by counsel, courts are only bound to recognize filings submitted by the party's attorney. *In re Trinsey*, 115 B.R. 828, 832-33 (Bankr. E.D. Pa. 1990). Consequently, such *pro se* filings may be treated as if they are not properly before the court. *United States v. Flowers*, 428 F. App'x 526, 530 (6th Cir. 2011); *Chasteen v. Jackson*, No. 1:09-CV-413, 2012 WL 1564493, at *3 (S.D. Ohio May 3, 2012).

In the case currently on appeal, the Debtors had not discharged Hoskins as their attorney at the time of filing their Proposed Order. In fact, in another *pro se* filing submitted subsequent to the Proposed Order, the Debtors definitively stated that they would not agree to release Hoskins from his role as their attorney. (Judicial Notice at 3, Bankr. Case No. 11-15607, ECF No. 95.) As a result, the Debtors' Proposed Order in which they attempted to object to 17 of the 21 claims filed in their case was not properly before the bankruptcy court. The bankruptcy court, therefore, did not err in refusing to acknowledge the objection set forth in the Proposed Order or to set it for a hearing. As a result, the Debtors never filed a valid objection to the Appellees' proofs of claim, and the claims, therefore, were not stripped of their presumptive validity. The Debtors' first argument is wholly without merit.

Turning to the Debtors' second asserted issue, we must determine whether the Appellees had standing to file claims or seek dismissal of the Debtors' Chapter 12 bankruptcy petition. Pursuant to 11 U.S.C. § 501, "a creditor . . . may file a proof of claim." 11 U.S.C. § 501(a). Section 101 defines "creditor" as an entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor . . . ." 11 U.S.C. § 101(10)(A). "Claim," in turn, is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . . ." 11 U.S.C. § 101(5)(A).

In the case currently on appeal, the Debtors listed ASB, Quality Leasing, and FCS as secured creditors on Schedule D of their petition. Both Debtors signed their schedules under penalty of perjury. *See* Fed. R. Bankr. P. 1008. By signing that declaration, the Debtors averred that the information set forth in the schedules was correct to the best of their knowledge, information, and belief. The Debtors never sought to amend their schedules. Therefore, by the Debtors' own admission, ASB, Quality Leasing, and FCS were creditors with claims against the Debtors at the time the petition was filed. The Debtors also included the Appellees in their proposed Chapter 12 plan. Although the Debtors argued in a number of filings, both submitted by counsel and by the Debtors *pro se*, that the debts owing to the Appellees were disputed, such designation would not defeat the Appellees' standing to file a claim. The Bankruptcy Code defines a "creditor" as an entity

holding a claim. By its very definition, "claim" includes a right to payment that is disputed. Clearly, ASB, Quality Leasing, and FCS had standing to file a claim in the Debtors' case.

Section 1208(c) of the Bankruptcy Code provides that "a party in interest" may file a motion to dismiss a debtor's Chapter 12 case. Although the term "party in interest" is often used in the Bankruptcy Code, the Code does not define it. "Whether a party qualifies as a 'party in interest' is determined on a case-by-case basis, taking into consideration whether that party has a 'sufficient stake' in the outcome of that proceeding, which can include having a pecuniary interest directly affected by the bankruptcy proceeding." *Church Mut. Ins. Co. v. Am. Home Assurance Co.* (*In re Heating Oil Partners*, *LP*), 422 F. App'x 15, 17 (2d Cir. 2011) (citation omitted). Clearly under this definition, a creditor is a party with a pecuniary interest directly affected by the continuation or dismissal of a bankruptcy petition. *See Mitan v. Duval* (*In re Mitan*), 178 F. App'x 503, 506 (6th Cir. 2006); *In re Abijoe Realty Corp.*, 943 F.2d 121, 125 (1st Cir. 1991).

The Debtors' argument that the Appellees were not the proper holders of the notes or that the mortgages or other security documents were somehow defective does not defeat the Appellees' standing to seek dismissal of the Debtors' Chapter 12 case.

> Although a defective mortgage or assignment may extinguish a creditor's legal interest in the property and/or defeat his interest as against a subsequent lien creditor or bona fide purchaser, the creditor would still have an equitable interest therein as against the mortgagor.

*In re Lee*, 467 B.R. 906, 916 (B.A.P. 6th Cir. 2012) (citations omitted). Accordingly, the Debtors' second issue on appeal is without merit.

B.    *Debtors' Evidentiary and Continuance Requests*

As stated *supra*, a court's rulings on evidentiary matters are reviewed for an abuse of discretion. A court has broad discretion in ruling on evidentiary requests and those decisions will only "be reversed if the abuse of discretion caused more than harmless error." *Tompkin v. Philip Morris USA, Inc.*, 362 F.3d 882, 897 (6th Cir. 2004) (citation omitted).

In its March 5, 2012 order, the bankruptcy court began its analysis of the Debtors' evidentiary requests by addressing the Debtors' oral request at the January 25, 2012 hearing to have Class appear as a "Private Attorney General."  Because Class admitted he was not licensed to practice law in any court in the country, the bankruptcy court denied the Debtors' "Private Attorney General" request.

> As recognized by the bankruptcy court in its March 5, 2012 order, 42 U.S.C. § 1988(b)
>
> allows the award of "a reasonable attorney's fee" to "the prevailing party" in various kinds of civil rights cases, including suits brought under § 1983 . . . .  When a plaintiff succeeds in remedying a civil rights violation, we have stated, he serves "as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority."

*Fox v. Vice*, 131 S. Ct. 2205, 2213 (2011) (quoting *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402, 88 S. Ct. 964 (1968) (*per cuiam*)).  In no way does the concept of a "private attorney general" permit an individual not licensed to practice law to represent a party in a court proceeding. An unlicensed individual who attempts to appear in a representative capacity for a party in court commits the unauthorized practice of law which is strictly prohibited.  28 U.S.C. § 1654; *Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1308 (2d Cir. 1991) ("[Section 1654] does not allow for unlicensed laymen to represent anyone else other than themselves.") (citation omitted). Consequently, the Debtors' request to have Class appear as a "Private Attorney General" was wholly without merit, and the bankruptcy court properly denied it.

Turning to the Debtors' request to introduce the testimony of Raja, a mortgage forensic auditor, and his mortgage securitization reports, the bankruptcy court determined that neither Raja nor the reports were properly before the court.  Although the Debtors submitted *pro se* filings seeking to have a summons issued for Raja and indicating they intended to present the forensic report at the hearing, the Debtors were represented by Hoskins at the time, and Hoskins stated his unwillingness to adopt the filings as Debtors' counsel.  As stated *supra*, *pro se* filings submitted by a party who is represented by counsel are not properly before a court pursuant to 28 U.S.C. § 1654. *Martinez*, 588 F.3d at 328.  Thus, the bankruptcy court did not err in determining that the requests to introduce the report and Raja's testimony were not properly before it.

As for the Debtors' oral motion to continue the confirmation hearing, the bankruptcy court did not abuse its discretion in denying that motion. The Debtors wanted a thirty-day continuance for the asserted purpose of filing a revised plan, conducting limited discovery, filing a proper objection to ASB's, FCS's, and Quality Leasing's proofs of claim, properly identifying witnesses and exhibits, and retaining new counsel. Chapter 12 contains relatively short deadlines for submission and confirmation of Chapter 12 plans. Section 1221 requires a debtor to file a plan within 90 days after the case is filed, and § 1224 provides that a hearing on confirmation of the plan shall be concluded within 45 days after the plan is filed. 11 U.S.C. §§ 1221 and 1224. These accelerated time periods reflect the "the expedited nature of chapter 12 cases." Collier on Bankruptcy, 16th ed., ¶ 1224.01[3].

Although § 1224 provides for continuance of the confirmation hearing beyond the 45-day time limit, such continuances may only be granted "for cause." Section 1224 does not give examples of what constitutes "cause;" however, the legislative history makes clear that the exception should be used only in extraordinary circumstances:

> Section 1224 requires that Chapter 12 confirmation hearings be concluded within forty-five days after the filing of the plan. The Conferees are aware that this imposes a burden on the bankruptcy courts. Therefore, an exception for cause is provided. While a backlog of cases is sufficient cause for an extension of the forty-five day requirement, the Conferees expect this exception to be used sparingly in order the facilitate the proper operation of Chapter 12—which proper operation depends on prompt action.

H.R. REP. No. 99-958, at 50 (1986) (Conf. Rep.).

When orally requesting a continuance of the confirmation hearing, the Debtors in this case argued that they needed additional time to properly object to the Appellees' claims and conduct discovery to support their allegations that there were issues with Appellees' notes and security documents. As recognized by the bankruptcy court, ASB, Quality Leasing, and FCS all filed claims by November 4, 2011. The Debtors began making their securitization and standing arguments as early as November 9, 2011, when they filed a response to ASB's motion to dismiss and motion for relief from the automatic stay. The Debtors had over two months to initiate proper proceedings objecting to, or seeking evaluation of, the Appellees' claims. In addition, the court was explicit in its January 5, 2012 order granting the Debtors' motion to continue the confirmation hearing that it

would conduct a hearing on the Debtors' plan on January 25, 2012 regardless of whether the Debtors filed an amended Chapter 12 plan prior to the hearing. Lastly, the bankruptcy court noted in its March 5, 2012 order that the Debtors had been asserting the securitization and standing grounds in state court proceedings prior to the filing of the current Chapter 12 petition. (March 5, 2012 Order at 16 n.11, Bankr. Case No. 11-15607, ECF No. 117.)

C.      *Denial of Confirmation*

After reviewing the Debtors' proposed Chapter 12 plan, the bankruptcy court concluded that the Debtors failed to meet their burden of proving the plan was confirmable. As submitted, the plan failed to satisfy the "best interests of the creditors" test and the requirements of feasibility and good faith within the meaning of 11 U.S.C. § 1225(a).

Section 1225 of the Bankruptcy Code provides the requirements for confirmation of a Chapter 12 plan. "The debtor has the burden of proof to establish each of the elements for confirmation . . . ." *In re Luchenbill*, 112 B.R. 204, 208 (Bankr. E.D. Mich. 1990) (citation omitted).

Section 1225(a)(4) is commonly referred to as the "best interests of the creditors" test and provides that the court shall confirm a plan if

> the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date[.]

11 U.S.C. § 1225(a)(4). This test "requires performing a hypothetical liquidation analysis taking into account the value of the property available to creditors as of the effective date of the plan and then comparing that value to what each creditor will be receiving under the plan as proposed." *In re Novak*, 252 B.R. 487, 491 (Bankr. D.N.D. 2000); *In re Perdue*, 95 B.R. 475, 476 (Bankr. W.D. Ky. 1988).

In the case currently on appeal, the Debtors did not provide a liquidation analysis with their plan. They also failed to provide consistent financial information throughout the pendency of this

case. The plan itself is unclear about what amounts will be paid to creditors and when. Without the benefit of consistent financial information or a liquidation analysis with which the creditors and the bankruptcy court could determine what amounts, if any, would be available to unsecured creditors in a hypothetical Chapter 7 liquidation, the Debtors clearly failed to meet their burden of proving their plan satisfied the best interests of the creditors test under § 1225(a)(4).

Section 1225(a)(6) requires a debtor to prove that his plan is feasible. To do this, the Chapter 12 plan must demonstrate that "the debtor will be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1225(a)(6).

> [T]he chapter 12 feasibility standard requires a court to scrutinize a debtor's proposed plan payments in light of projected income and expenses in order to determine whether it is likely the debtor will be able to make the payments required by the plan. It is not necessary for debtors to guarantee the ultimate success of their plan, but only to provide a reasonable assurance that the plan can be effectuated.

*In re Howard*, 212 B.R. 864, 878-79 (Bankr. E.D. Tenn. 1997) (citations omitted) (internal question marks omitted). "In order to sufficiently establish such reasonable assurance, 'a plan must provide a realistic and workable framework for reorganization.' " *In re Brice Rd. Devs., L.L.C.*, 392 B.R. 274, 283 (B.A.P. 6th Cir. 2008) (citation omitted).

In the case currently on appeal, the Debtors did not provide a list of any of their current farming expenses. The historic income information they provided throughout the pendency of the case was wildly inconsistent. Comparing the figures provided for 2010 alone, the difference is drastic: $9,238.00 as stated on the petition and negative $21,008.00 on their income tax return. That is a difference of $30,246.00. Additionally, the Debtors refused to disclose any of the details of the oral contracts for the timber farming operation. By failing to do this, the Debtors made it completely impossible for the bankruptcy court, the Chapter 12 Trustee, or their creditors to determine whether the Debtors' plan was feasible. Therefore, the bankruptcy court properly determined that the Debtors also failed to meet their burden of proof with respect to the feasibility requirement of 11 U.S.C. § 1225(a)(6).

Lastly, § 1225(a)(3) provides that a Chapter 12 plan must be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1225(a)(3).

> As required by § 1225(a)(3), in order to be confirmed, a court must determine that, based upon a totality of the circumstances following a factual inquiry, the plan was proposed in good faith. Although not defined under the Code, "good faith" is generally interpreted to mean a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code.

*In re Chambers*, No. 08-31399, 2008 WL 5649690, at *13 (Bankr. E.D. Tenn. Nov. 20, 2008) (internal citations omitted) (internal quotation marks omitted). In determining whether a plan is filed in good faith, courts traditionally look to the nonexhaustive list of 12 factors set forth in *Hardin v. Caldwell* (*In re Caldwell*), 851 F.2d 852, 859 (6th Cir. 1988). These factors include (1) the amount of the proposed payments, (2) the debtor's ability to earn income, (3) whether the plan accurately lists the debtor's debts, expenses, and percentage to be paid to unsecured creditors, and (4) "whether the debtor is attempting to abuse the spirit of the" Bankruptcy Code. *Id.*; *In re Zurface*, 95 B.R. 527, 535-36 (Bankr. S.D. Ohio 1989) (applying factors from *Caldwell* which are used to determine good faith in the context of Chapter 13 to the concept of good faith under § 1225(a)(3)). These factors are to be analyzed under a totality of the circumstances approach. *Caldwell*, 851 F.2d at 860.

> In the case on appeal, the bankruptcy court stated:

> While the Debtors' intent in commencing this case and in proposing their plan is perhaps not malicious, their imprudent and misguided dealings with their creditors and this Court have the effect of hindering the legitimate expectations of creditors and abusing the letter and spirit of the Bankruptcy Code.

(March 5, 2012 Order at 33, Bankr. Case No. 11-15607, ECF No. 117.) In reaching this conclusion, the bankruptcy court relied on the fact that the Debtors had not satisfied their burden of proving that the plan was confirmable. The bankruptcy court also relied on the Chapter 12 Trustee's assessment that he had reservations about the Debtors' conduct in the case and that it would be impossible for him to administer the plan as proposed. The bankruptcy court also reasoned that the Debtors' allegations that 17 of the 21 claims filed in their case were invalid was "so improbable" that it evidenced the Debtors' bad faith in proposing the plan. (*Id.* at 34.)

The bankruptcy court did not abuse its discretion in finding that the Debtors lacked good faith in proposing their plan. Although the Debtors stated in their plan that they disputed the majority of their secured creditor's claims, they never filed any type of motion or adversary complaint to determine the extent and/or validity of the claims. Additionally, the Debtors failed to disclose reliable, consistent financial information such that the bankruptcy court or creditors could determine whether the Debtors' proposed repayment plan was feasible. And, as the bankruptcy court recognized, the validity of a number of the disputed claims had already been established in state court. (*See* Order at 34, Bankr. Case No. 11-15607, ECF No. 117) ("Several claims in fact appear to have been reduced to judgment in state court proceedings.") The plan's failure to clearly set forth which claims were to be paid would make the Chapter 12 Trustee's burden of administering the case also inordinately difficult.

A review of the facts in this case and the relevant legal theories demonstrates that the bankruptcy court properly denied confirmation of the Debtors' proposed Chapter 12 plan under 11 U.S.C. § 1225(a)(3), (4), and (6).

D.    *Dismissal of the Debtors' Case*

In addressing the motion to dismiss, the bankruptcy court concluded that Quality Leasing and ASB had met their burden of demonstrating that cause existed to dismiss the Debtors' case under § 1208(c): including (1) unreasonable delay or gross mismanagement by the Debtors that is prejudicial to creditors; (2) continuing loss to or diminution of estate coupled with no reasonable likelihood of rehabilitation; and (3) bad faith in commencing the case and in proposing the plan. At the confirmation hearing, ASB sought to question both Debtors about their ability to earn income, the details of their Chapter 12 plan, and about other financial issues; however, both Debtors refused to testify about these issues. On appeal, the Debtors challenge the bankruptcy court's dismissal of their case only to the extent that the bankruptcy court improperly rejected their *pro se* filings and their arguments about Appellees' claims.

Although the bankruptcy court relied on multiple grounds in concluding that dismissal of the Debtors' case was warranted, any one of the grounds alone was sufficient for dismissal, including

the court's finding of bad faith. *Cedar Shore Resort, Inc. v. Mueller* (*In re Cedar Shore Resort, Inc.*), 235 F.3d 375, 381 (8th Cir. 2000); *Trident Assocs. Ltd. P'ship v. Metro. Life Ins. Co.* (*In re Trident Assocs. Ltd. P'ship*), 52 F.3d 127, 130 (6th Cir. 1995); *In re Sanchez*, 429 B.R. 393, 399-400 (Bankr. D.P.R. 2010); *In re Walton*, 116 B.R. 536, 539-40 (Bankr. N.D. Ohio 1990) ("The [Bankruptcy] Code has an implied requirement of good faith in filing a bankruptcy petition, the lack of which is cause for dismissal" in a Chapter 12 proceeding.). Because we conclude that the bankruptcy court properly dismissed the Debtors' case based on a finding of bad faith, it is unnecessary to review the bankruptcy court's decision as to dismissal under 11 U.S.C. § 1208(c)(1) and (c)(9). This approach is especially appropriate given that the Debtors do not challenge the bankruptcy court's dismissal of their case in their brief on appeal.

Section 1208(c) provides that a court may dismiss a Chapter 12 case "for cause." Although examples of cause are listed in § 1208(c)(1) through (9), this list is nonexclusive. *Michels v. Maynard Sav. Bank* (*In re Michels*), 305 B.R. 868, 872 (B.A.P. 8th Cir. 2004). Courts routinely have found that a debtor's lack of good faith in filing for bankruptcy relief can serve as grounds for dismissal. *Trident Assocs. Ltd. P'ship*, 52 F.3d at 130; *In re Burger*, 254 B.R. 692, 696 (Bankr. S.D. Ohio 2000). The party seeking dismissal of a case based on a debtor's bad faith must demonstrate a debtor's bad faith by a preponderance of the evidence. *Alt v. United States* (*In re Alt*), 305 F.3d 413, 420 (6th Cir. 2002); *In re Westgate Props., Ltd.*, 432 B.R. 720, 723 (Bankr. N.D. Ohio 2010). A bankruptcy court has broad discretion to determine if a "for cause" dismissal of a bankruptcy case is warranted. *Gateway N. Estates, Inc. v. U.S. Trustee* (*In re Gateway N. Estates, Inc.*), 165 B.R. 427, 428 (E.D. Mich. 1994). "Accordingly, the decision to dismiss the case will be upheld unless it was an abuse of discretion, defined as 'a definite and clear conviction that the trial court committed a clear error of judgment.' " *AMC Mortg. Co., Inc. v. Tenn. Dep't of Rev.* (*In re AMC Mortg. Co., Inc.*), 213 F.3d 917, 920 (6th Cir. 2000) (citing *Bowling v. Pfizer, Inc.,* 102 F.3d 777, 780 (6th Cir. 1996)).

There is no single test for determining whether a bankruptcy petition was filed in good faith. *Trident Assocs. Ltd. P'ship*, 52 F.3d at 131. Instead, it "is a fact-specific and flexible determination" that must be made on a case-by-case basis by looking to a totality of the circumstances. *Alt*, 305 F.3d at 419; *Metro Emps. Credit Union v. Okoreeh-Baah* (*In re Okoreeh-Baah*), 836 F.2d 1030,

1033 (6th Cir. 1988) ("Good faith is an amorphous notion, largely defined by factual inquiry."). Factors to consider in making a good faith filing determination include the factors used in determining whether a plan has been proposed in good faith. *Alt*, 305 F.3d at 420; *Burger*, 254 B.R. at 696 (noting that Chapter 12 was modeled after Chapter 13, such that decisions analyzing Chapter 13 may be useful). Other factors to consider include:

(1) the nature of the debt including the question of whether the debt would be nondischargeable in a Chapter 7 proceeding;

(2) the timing of the petition;

(3) how the debt arose;

(4) the debtor's motive in filing the petition;

(5) how the debtor's actions affected creditors;

(6) the debtor's treatment of creditors both before and after the petition was filed;

(7) whether the debtor has been forthcoming with the bankruptcy court and the creditors.

(8) the debtor's sincerity in petitioning for bankruptcy relief; and

(9) the amount of payment offered by debtor as indicative of the debtor's sincerity to repay the debt.

*Alt*, 305 F.3d at 419. "[N]o list is exhaustive of all the conceivable factors which could be relevant when analyzing a particular debtor's good faith . . . . [N]o one factor should be viewed as being a dispositive indication of the debtor's good faith." *In re Mehlhose*, 469 B.R. 694, 708 (Bankr. E.D. Mich. 2012) (citing *Caldwell*, 851 F.2d at 860). "The ultimate inquiry behind this judicially created ground for dismissal is whether the debtor has abused the bankruptcy process." *Burger*, 254 B.R. at 696 (citation omitted) (internal quotation marks omitted).

After reviewing all of the facts, the bankruptcy court in this appeal found many indicia of bad faith in the Debtors' filing for Chapter 12 relief. These factors included (1) the absence of basic financial information; (2) serious deficiencies in the Debtors' proposed plan; (3) the Debtors' characterization of almost all the claims as disputed; (4) the Debtors' refusal to respond to the Appellees' offers to examine the original notes and security documents; (5) the Debtors' refusal to acknowledge the validity of the documents when presented with them; (6) Carl Pertuset's failure to be candid with the bankruptcy court; (7) Carl Pertuset's evasive testimony on issues regarding

insurance coverage, his signature on various loan documents, etc.; (8) the Debtors' refusal to testify at the confirmation hearing about issues related to the plan and the Debtors' ability to earn income; and (9) the Debtors' refusal to acknowledge that some of the claims disputed by the Debtors had already been adjudged by state courts to be valid and enforceable. All of these facts led the bankruptcy court to conclude that the Debtors were not forthcoming with the court or their creditors.

The bankruptcy court also found that the Debtors' course of conduct in this case "draws into question the Debtors' good faith in filing their petition and Proposed Plan." (March 5, 2012 Order at 35, Bankr. Case No. 11-15607, ECF No. 117.) The bankruptcy court noted that in both the prior case and the current case "the Debtors advanced peculiar theories as to how they proposed to repay their creditors." (*Id.* at 36.) In their 2009 Chapter 12 case, the Debtors proposed to fund their plan by liquidating their interest in a multi-billion dollar maritime judgment lien which the bankruptcy court found was specious at best. In their current case, the Debtors proposed avoiding most of the secured liens based on unusual theories of securitization. The Debtors advanced these arguments despite the fact that all of the loan documents in the record demonstrated that the creditors filing claims were the original creditors on the notes and security agreements. The bankruptcy court also noted that the Debtors had a "history of diverging from counsel and pursuing questionable alternatives in connection with a plan of reorganization." (*Id.* at 37.) The court found that this was also a factor that weighed in favor of dismissing the Debtors' case for bad faith.

Other factors the bankruptcy court determined were indicia of bad faith were the close proximity in time of the Debtors' bankruptcy filing to resolution of the state court proceedings with FCS and ASB and the fact that the Debtors' *pro se* filings advanced a multitude of obscure claims and defenses, many of which had been raised in the state court proceedings. Given that Chapter 12 was "intended to give 'family farmers facing bankruptcy a fighting chance to reorganize their debts and keep their land,' " the bankruptcy court concluded that the Debtors in this case had abused the bankruptcy system by not being fundamentally fair with the creditors or the bankruptcy court. (March 5, 2012 Order at 33, Bankr. Case No. 11-15607, ECF No. 117.)

A review of the facts in this case clearly demonstrates that the bankruptcy court did not abuse its discretion in determining that dismissal of the Debtors' case was appropriate under § 1208(c)

based on the Debtors' bad faith. Throughout the case, the Debtors offered up inapplicable legal theories about a range of subjects. They also asserted entitlement to certain rights under irrelevant laws including the Occupational Safety and Health Administration Rules and the National Labor Relations Act. In arguing that various debts were not enforceable, the Debtors made blanket allegations of forgery and photo shopping without ever producing even a scintilla of evidence supporting their claims. In what appears to be a very disingenuous argument, Carl Pertuset testified he signed the original notes, but that he did not sign the copies he was presented with by the Appellees. Several of the Appellees offered to show the original notes to the Debtors on several occasions both before and during the most recent Chapter 12 filing, but the Debtors refused to take advantage of those offers. Additionally, the Debtors had not made payments on a large number of their debts since at least 2009. They only proposed to pay approximately 4.7% of their total liabilities in the Chapter 12 case. Under a totality of the circumstances, the bankruptcy court was not clearly erroneous in finding that the Debtors lacked good faith.

E.      *Dismissal With Prejudice*

The bankruptcy court provided in its March 5, 2012 order that dismissal of the Debtors' case was with prejudice for a period of two years. Section 349(a) of the Bankruptcy Code provides that "[u]nless the court, for cause, orders otherwise, . . . dismissal of a case under this title [does not] prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title." Section 109(g) provides:

> Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if–
>
> > (1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case;

11 U.S.C. § 109(g). "Section 109(g) represents Congress's response to the problem created by those debtors who make sequential filings to abuse the Code and creditors." *In re Pike*, 258 B.R. 876, 881 (Bankr. S.D. Ohio 2001) (citation omitted). Taken together, §§ 109(g) and 349(a) grant a bankruptcy court the authority to prohibit bankruptcy filings for 180 days or longer when sufficient cause exists

for doing so. *Dietrich v. Nob-Hill Stadium Props.*, No. 05-2255, 2007 WL 579547, at \*5 (6th Cir. Feb. 15, 2007); *Cusano v. Klein* (In re Cusano), 431 B.R. 726, 736 (B.A.P. 6th Cir. 2010) (concluding that a two year bar to refiling was appropriate for a *pro se* debtor).

Although "willful" as used in § 109(g)(1) is not defined in the Bankruptcy Code, courts have held that

> the court will construe repeated failure to appear or lack of diligence as willful conduct. Repeated conduct strengthens the inference that the conduct was deliberate. Additionally, the court will infer from a pattern of dismissals and refilings in unchanged circumstances willful failure to abide by orders of the court and an abuse of the bankruptcy process which this amendment was designed to prevent.

*In re Nelkovski*, 46 B.R. 542, 544 (Bankr. N.D. Ill. 1985) (citation omitted); *See also Casse v. Key Bank Nat'l Assoc.* (*In re Casse*), 198 F.3d 327, 336-37 (2nd Cir. 1999) (agreeing with Sixth Circuit cases). In *Cusano*, the Bankruptcy Appellate Panel held that filing three petitions in three years in response to collection efforts undertaken in state court constitutes willful conduct sufficient to prohibit the debtor from refiling for bankruptcy relief for 2 years. *Cusano*, 431 B.R. at 737. Likewise, "[a] bankruptcy court's finding of bad faith, or an abuse of the bankruptcy process particularly in the case of serial filers, is generally considered sufficient cause to impose a bar to refiling for more than 180 days." *In re Mehlhose*, 469 B.R. 694, 712 (Bankr. E.D. Mich. 2012) (citation omitted).

In the case currently on appeal, the bankruptcy court found that dismissal of the Debtors' case with prejudice for a period of two years was appropriate based on a number of facts which include the following: (1) the Debtors had been given two opportunities to reorganize and save their family farm over the last three years; (2) none of the Debtors' creditors had been paid for an extended period of time; (3) the creditors had spent a great deal of time and resources in seeking to enforce their state law rights in bankruptcy court and in state court; and (4) the Debtors had been extremely litigious between dismissal of their 2009 case and the filing of their current Chapter 12 petition. In so ruling, the bankruptcy court recognized that

> the Debtors' home and livelihood are at risk in this proceeding. This Court was hopeful that the Debtors would work with their bankruptcy counsel and propose an amended plan of reorganization for creditors to consider prior to the Confirmation

Hearing, a sentiment similarly echoed by Farm Credit Services and the Chapter 12 Trustee. While the Debtors may truly believe the theories they espouse in support of their position in this and their previous Chapter 12 bankruptcy case, as was argued by Attorney Hoskins at the Confirmation Hearing, the Debtors have been unable to propose[] a confirmable plan and have been given a fair opportunity to pursue such arguments.

(March 5, 2012 Order at 40, Bankr. Case No. 11-15607, ECF No. 117.) Given the facts in the Debtors' case, the bankruptcy court concluded that a two-year bar to refiling was necessary "to protect the integrity of the bankruptcy process and prevent further prejudice to creditors." (*Id.*).

A review of all the facts in this case indicates that the bankruptcy court was not clearly erroneous in concluding that the Debtors' bad faith and serial filings were sufficient to warrant dismissal of their case with prejudice for two years. The Debtors' arguments before the bankruptcy court and in this appeal were nonsensical and, at times, incomprehensible. The Debtors unsuccessfully raised these same arguments in many of the state court proceedings. The Debtors asserted rights under wholly inapplicable legal theories. With regard to their securitization and standing arguments, the Debtors never produced any proof to support their contentions.

Following dismissal of their previous Chapter 12 case, the Appellees sought to enforce their rights in state court, only to have the Debtors refile for bankruptcy relief once the state court entered judgments in some of the proceedings. If the creditors are not given a sufficient period of time in which to enforce those judgments, the Debtors could easily frustrate collection efforts by filing another bankruptcy petition in bad faith.

F.      *Motion to Reconsider*

A motion to alter or amend under Federal Rule of Civil Procedure 59(e), applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 9023, may be granted "if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) (citing *GenCorp, Inc. v. Am. Int'l Underwriters,* 178 F.3d 804, 834 (6th Cir. 1999)). The decision to grant relief pursuant to Federal Rule of Civil Procedure 59(e) is within the sound

discretion of the court. *Hamerly v. Fifth Third Mortg. Co. (In re J & M Salupo Dev. Co.)*, 388 B.R. 795, 805 (B.A.P. 6th Cir. 2008) (citation omitted). A motion to alter or amend a judgment is considered "an extraordinary remedy and should be granted sparingly because of the interest in finality and conservation of scarce judicial resources." *Id.* The burden of demonstrating grounds for relief under Rule 59(e) lies with the movant. *Id.* "A motion under Rule 59(e) is not intended to provide the parties an opportunity to relitigate previously-decided matters or present the case under new theories." *Id.* The denial of a Rule 59(e) motion is reviewed for an abuse of discretion.

Federal Rule of Civil Procedure 60(b), applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 9024, allows for relief from a final judgment or order based on

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Relief is granted under Rule 60(b)(6) "only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule." *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990) (citation omitted). A decision to grant or deny a Rule 60(b) motion is within the discretion of the trial court. *Gourlay v. Sallie Mae, Inc. (In re Gourlay)*, 465 B.R. 124, 125 (B.A.P. 6th Cir. 2012). As with Rule 59(e), the party seeking relief pursuant to Rule 60(b) "bears the burden of establishing that its prerequisites are satisfied." *Rogan v. Countrywide Home Loans (In re Brown)*, 413 B.R. 700, 705 (B.A.P. 6th Cir. 2009) (citation omitted). The movant must establish the necessary grounds by clear and convincing evidence. *Info-Hold, Inc. v. Sound Merchandising, Inc.*, 538 F.3d 448, 454 (6th Cir. 2008). "Rule 60(b) does not allow a defeated litigant a second chance to convince the court to rule in his or her favor by presenting new explanations, legal theories, or proof." *Jinks v. AlliedSignal, Inc.*, 250 F.3d 381, 385

(6th Cir. 2001) (citation omitted). The denial of a Rule 60(b) motion is reviewed for an abuse of discretion. *Eglinton v. Loyer* (*In re G.A.D., Inc.*), 340 F.3d 331, 334 (6th Cir. 2003) (citation omitted).

In the case currently on appeal, the Debtors argued that the bankruptcy court was biased against them. The Debtors also argued that the bankruptcy court erred in ruling on the Debtors' securitization arguments and in denying the relief requested in their *pro se* filings. With respect to their arguments of bias, the Debtors never raised those allegations prior to filing their motion to reconsider. Because Rule 59(e) does not permit parties to raise new legal theories or advance new issues, the bankruptcy court concluded the Debtors were not entitled to relief on their claims of bias. That decision was not an abuse of discretion. Rule 59(e) does not allow the Debtors to advance new legal theories.

Even if the Debtors were allowed to raise the allegations of bias, however, their claims would fail.

> To determine whether Rule 59 or 60 relief is appropriate based on a violation of [28 U.S.C.] § 455, the court considers the risk of injustice to the parties, the risk that denial of relief will cause injustice in other cases and the risk of undermining public confidence in the judicial process. *See Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847, 863 (1988). Under either subsection [of § 455], the honesty, integrity and impartiality of judges is presumed; therefore, a party seeking recusal bears the substantial burden of proving otherwise. *See United States v. Martinez,* 446 F.3d 878, 883 (8th Cir. 2006); *Dyas v. Lockhart,* 705 F.2d 993, 997 (8th Cir. 1983).

*White v. National Football League*, No. 4-92-906(DSD), 2008 WL 1827423, at *3 (D. Minn. Apr. 22, 2008). In making their allegations, the Debtors made vague, general accusations of bias. They failed to advance any support for their allegations. Prior to her appointment to the bench, the bankruptcy judge represented both creditors *and* debtors. The Debtors also offered no proof that the bankruptcy judge had ever represented FCS, ASB, or Quality Leasing, at any time in the past. In addition, the Debtors' allegations about sanctioning Hoskins and threatening him with contempt were completely false. The bankruptcy court never sanctioned Hoskins, nor did it ever issue a contempt order against him or the Debtors. All in all, the Debtors' claims of bias are "baseless and unsubstantiated." *Staten v. Nissan N. Am., Inc.*, 134 F. App'x 963, 966 (7th Cir. 2005). The

Debtors' claim for reconsideration under either Rule 59(e) or 60(b) on their allegation of bias was without merit, and the bankruptcy court did not abuse its discretion in denying it.

Turning to the Debtors' other arguments about their *pro se* requests to introduce evidence and testimony and their securitization and standing arguments, the bankruptcy court determined that the Debtors' claims for relief under Rule 59(e) were wholly without merit. The bankruptcy court had considered both issues at the confirmation hearing and had addressed both issues in its March 5, 2012 order. The Debtors failed to allege that the bankruptcy court made a clear error in applying the law or that there had been a change in controlling law or newly discovered evidence which would require reconsideration of the bankruptcy court's decision. The bankruptcy court also determined that the Debtors had not demonstrated any grounds for relief from those decisions under Rule 60(b). The Debtors simply reiterated their earlier arguments about the introduction of witnesses and testimony. They failed to advance any grounds for relief under Rule 59(e) or 60(b).

A motion for reconsideration is not designed to be used "as a substitute for an appeal . . . or as a means of seeking review of [a] Court's previous opinion . . . ." *Rivera v. Scism*, 472 F. App'x 105, 106 (3d Cir. 2012) (internal citations omitted). If a party seeks to use a motion to reconsider for either purpose, a court does not abuse its discretion in denying the motion to reconsider. *Id.*; *Varden v. Danek Medical, Inc.*, 58 F. App'x 137, 139 (6th Cir. 2003). Accordingly, the bankruptcy court in this appeal did not abuse its discretion in denying the Debtors' request to reconsider the bankruptcy court's denial of the Debtors' evidentiary requests or its rejection of the Debtors' securitization/standing arguments.

As for the Debtors remaining allegations about "Servicing Misconduct," etc., the Debtors had never raised these allegations prior to filing the motion to reconsider. Therefore, the bankruptcy court did not abuse its discretion in determining that the Debtors were not entitled to relief under Rule 59(e) or 60(b) under any of these new theories. Insofar as the Debtors were seeking affirmative relief, the bankruptcy court ruled that the matter was not properly before the court. A party who is seeking affirmative relief must either file a motion pursuant to Federal Rules of Bankruptcy Procedure 9013 and 9014 or an adversary proceeding complaint pursuant to Federal Rule of Bankruptcy Procedure 7001. The Debtors did neither.

## V. CONCLUSION

For the foregoing reasons, we affirm the March 5, 2012 bankruptcy court order dismissing the case with prejudice pursuant to 11 U.S.C. § 1208(c)(1), (c)(5) and (c)(9); dismissing the case with prejudice for a period of two years pursuant to 11 U.S.C. §§ 105(a) and 349(a); denying confirmation of the Debtors' proposed Chapter 12 plan; denying the Debtors' evidentiary requests; and denying the Debtors' oral motion to continue the confirmation hearing; and affirm the March 30, 2012 bankruptcy court order denying the Debtors' motion to reconsider.